863 A.2d 366 (2004)
374 N.J. Super. 1
Linda PONDEN, Plaintiff-Appellant,
v.
William E. PONDEN, V. Richard Ferreri, P.C., V. Richard Ferreri, Individually, American Home Products Corporation, Wyeth-Ayherst Global Pharmaceuticals and The Vanguard Group, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 2004.
Decided November 29, 2004.
*367 Glenn A. Bergenfield, Princeton, argued the cause for appellant.
Christopher J. Carey, Morristown, argued the cause for respondents, V. Richard Ferreri, P.C. and V. Richard Ferreri (Graham, Curtin & Sheridan, attorneys; Mr. Carey, of counsel; Mr. Carey and David M. Blackwell, on the brief).
Respondents American Home Products Corporation, Wyeth-Ayerst Global Pharmaceuticals and The Vanguard Group have not filed briefs.
Before Judges WEFING, FALL and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we consider the extent of a trial court's discretion, in the wake of the 2000 rule amendments known as "Best Practices," to extend the time for the submission of expert reports after the discovery end date has passed and in the absence of a scheduled arbitration or trial date. Because, in these circumstances, the trial judge erroneously adopted a mechanical approach to the application of the "Best Practices" rule amendments, and misconceived his authority to impose some lesser sanction, we reverse the trial judge's refusal to allow plaintiff to submit and rely upon an expert report beyond the discovery end date, and we vacate the summary judgment entered against plaintiff as a result.

I
Plaintiff Linda Ponden (plaintiff) filed this legal malpractice action against defendants V. Richard Ferreri, P.C. and V. Richard Ferreri, individually (Ferreri). Ferreri represented plaintiff in an action she filed against her husband, William E. Ponden (Ponden), in 1998,[1] seeking a dissolution of their twenty-eight year marriage, equitable distribution of their marital assets, and the resolution of various other matrimonial and child-related issues.
In the divorce action, plaintiff claimed that Ponden had threatened to leave her and their children "in the gutter" and repeatedly told her that he was "moving to China,"[2] or somewhere else outside the United States. During the divorce proceedings, plaintiff repeatedly complained that Ponden refused to provide meaningful discovery regarding the extent and nature of marital assets, particularly those held solely in Ponden's name. On more than one occasion, the trial judge entered orders restraining Ponden from dissipating assets that may have been subject to equitable distribution. It appears, however, that Ferreri never sought the issuance of restraints against the entities that held these assets.
Eventually, the marital partners resolved their disputes and, on February 8, 1999, a property settlement agreement (PSA) was spelled out in proceedings in open court. A final judgment of divorce, based upon the PSA, was entered on February 18, 1999. The PSA contained the parties' agreement that they would equally divide certain investment and retirement accounts held by Ponden's employer, Wyeth-Ayerst Global Pharmaceuticals *368 (Wyeth), Wyeth's parent corporation, American Home Products Corporation (AHP), and The Vanguard Group.[3] While plaintiff possessed a 50% equitable interest in those marital assets as agreed upon in the PSA, they were titled only in Ponden's name.
On February 10, 1999, Ferreri wrote to AHP and Vanguard, informing them of the PSA and asking that they honor the restraints contained in prior court orders. On February 17, 1999, AHP advised that, in accordance with their procedures in such circumstances, it would place "a temporary, 14-day restriction" on Ponden's pension and saving plan assets, but advised that the restriction would not continue if it did not receive a draft qualified domestic relations order (QDRO) within the following fourteen days. Ferreri apparently did not submit a draft QDRO until April 15, 1999.
On February 18, 1999, in response to Ferreri's February 10, 1999 letter, Vanguard stated that it would place "a temporary freeze on the accounts" held by Ponden, but that if Ponden objected, "the freeze will be lifted." Vanguard correctly observed that the prior court orders restrained Ponden but not Vanguard. On April 30, 1999, Vanguard again wrote to Ferreri to advise that Ponden objected to the freeze referred to in Vanguard's February 18, 1999 letter, and, as a result, it had lifted the freeze.
On May 19, 1999, at or around the time Ponden terminated his relationship with AHP and Wyeth, Ferreri obtained an order to show cause with temporary restraints, including restraints prohibiting AHP, Wyeth and Vanguard, among others, from transferring any funds or assets to Ponden without court approval. By that time, it appears that Ponden had obtained assets from these sources in the approximate amount of $1,700,000. He immediately left the country.[4] In subsequent proceedings, a judgment was entered by the Family Part judge on June 8, 1999, in favor of plaintiff and against Ponden in the amount of $692,181.76. This judgment has so far proven uncollectible.[5]

II
Claiming that Ferreri negligently failed to pursue proper and effective means to protect her interests against Ponden's anticipated *369 unlawful and improper actions, plaintiff commenced this legal malpractice action on February 8, 2001. Ferreri filed a responsive pleading on July 17, 2001, and the case was assigned by the court to Track 3, meaning that the court provided the parties with 450 days for discovery.
On July 16, 2002, Ferreri moved to compel the production of plaintiff's liability expert report by a date certain pursuant to R. 4:17-4(e). On August 30, 2002, the trial judge ordered plaintiff to submit her expert report within thirty days. Plaintiff timely complied with that direction by serving her expert's report on September 26, 2002. That report, in rather conclusory terms, stated that routine discovery devices should have and could have been implemented to adequately determine the scope and extent of assets, and that Ferreri's conduct amounted to "malpractice and his actions ... deviated from the standard practices of a matrimonial attorney to the detriment of [plaintiff]."
On August 3, 2002, the trial court issued a notice that discovery would end on October 10, 2002. On October 31, 2002, plaintiff's former attorney wrote to the court seeking a sixty-day extension of discovery; Ferreri readily consented. As a result, on November 19, 2002, the court sent a notice that extended the discovery end date to December 9, 2002. While these events were occurring, plaintiff was also taking steps to change attorneys. On the same date that the trial court sent the last discovery end date notice, plaintiff's present counsel obtained a substitution of attorney from former counsel. That substitution of attorney was filed with the trial court on December 2, 2002. New counsel was then unaware of the discovery end date.
Ferreri submitted his expert report on December 9, 2002, the very last day of the discovery period. Ferreri's expert stated that "[t]his plaintiff has failed to prove that [Ferreri] breached the duty he owed to her and that that breach was the proximate cause of any damage she has sustained." This expert report further asserted that plaintiff's expert failed to establish the standard of care against which Ferreri's actions were to be measured.
Following the service of his own expert's report, Ferreri moved for summary judgment, asserting that plaintiff's expert had rendered only a legally-insufficient, net opinion. Plaintiff cross-moved for permission to serve a new expert report out of time; plaintiff also sought partial summary judgment, claiming that the applicable standard of care was obvious, had already been described by the trial judge when granting summary judgment to AHP, and was based on common knowledge.
In seeking permission to serve the new expert report, plaintiff's present counsel filed his own certification, asserting that, upon his review of the file, he believed plaintiff's existing expert had to be replaced as the result of a conflict of interest. Counsel also stated that the file obtained from his predecessor did not contain, and he was not otherwise aware, of the discovery end date. He claimed that he only learned of the discovery end date when served with Ferreri's motion for summary judgment.
In considering these contentions, the trial judge held that the first expert report consisted only of a net opinion and that plaintiff's claim of malpractice could not be sustained on a common knowledge theory.[6] As a result, Ferreri was undoubtedly entitled to summary judgment in the *370 absence of the trial court granting plaintiff the opportunity to serve and rely upon her new expert report. While the trial judge accurately indicated that the pre-"Best Practices" approach would have provided ample discretion to grant relief from the discovery cutoff date, he incorrectly opined that, under "Best Practices," his discretion was "streamlined considerably," and denied plaintiff's motion for relief from the discovery end date.

III
The "Best Practices" rule amendments were intended and designed to improve not only the efficiency but also the expedition of civil proceedings, Vargas v. Camilo, 354 N.J.Super. 422, 425 n. 1, 808 A.2d 103 (App.Div.2002), certif. denied, 175 N.J. 546, 816 A.2d 1048 (2003), by ratcheting down on the needless delays in the completion of discovery, by eliminating the easy availability of discovery extensions, and by rendering meaningful the arbitration and trial dates scheduled by the courts. Included in this significant revamping of the rules were changes to R. 4:24-1, which outlines the time for discovery and the manner in which that time may be extended, and R. 4:17-7, which directs the manner and time for amending discovery responses.
Contrary to its predecessor, R. 4:24-1 now provides for differing periods of discovery, depending upon the court's early evaluation of each particular case's needs. To "counteract an unfortunate and increasingly dilatory, casual and desultory approach by some members of the bar to their litigation responsibilities," Tucci v. Tropicana Casino and Resort, Inc., 364 N.J.Super. 48, 53, 834 A.2d 448 (App.Div.2003), the time for discovery permitted by a case's track assignment was rendered more realistic by the prohibition of more than one sixty-day extension by consent, and the allowance for a further extension only for good cause, provided the application is made returnable prior to the discovery end date. R. 4:24-1 also states that "[n]o extension of the time for discovery is permitted after an arbitration or trial date has been set absent a showing of exceptional circumstances."
R. 4:17-7 was also modified. It had previously permitted amendments to answers to interrogatories, including those interrogatories seeking expert information, up until twenty days prior to trial. The rule, as amended, now prohibits any such amendments later than twenty days "prior to the end of the discovery period, as fixed by the track assignment or subsequent order." Subsequent amendments are allowed "only if the party seeking to amend certifies therein that the information requiring the amendment was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date." R. 4:17-4(e) continues to permit a propounding party to seek the fixing of a date for the submission of expert reports.
We adhere to our recent decision in Tucci that the "Best Practices" rule amendments "were not designed to do away with substantial justice on the merits or to preclude rule relaxation when necessary to secure a just determination." 364 N.J.Super. at 53, 834 A.2d 448 (citations and internal quotations omitted). It perhaps suffices to say that Tucci's application, notwithstanding the minor differences in the facts and circumstances upon which it was based, compels reversal of the order denying an extension of discovery presently under review in the case at hand. We write further, however, to point out that the absence of an arbitration or trial date at the time of the trial judge's ruling is of critical significance in a court's exercise of *371 its discretion to extend discovery.[7] In keeping with the philosophy adopted in Tucci, we conclude that in the absence of a scheduled arbitration or trial date, a trial court's approach to an application to extend discovery, for the purpose of submitting a late expert report, should not be materially different from the pre-"Best Practices" approach. See Mason v. Sportsman's Pub, 305 N.J.Super. 482, 493-94, 702 A.2d 1301 (App.Div.1997); Glowacki v. Underwood Memorial Hosp., 270 N.J.Super. 1, 13-14, 636 A.2d 527 (App.Div.1994).
This is not to suggest that the "Best Practices" rules do not "mean something." We do not agree with Ferreri that a contrary holding represents an evisceration of "Best Practices." The proper application of the "Best Practices" rule amendments has had, and will continue to have, a salutary effect on the fair and efficient administration of justice. But these rule amendments are not a means unto themselves. Their raison d'etre was to render trial dates meaningful and, thus, the enforcement or relaxation of discovery end dates are chiefly governed by the presence of an existing trial or arbitration date and whether the late discovery can be completed without jeopardizing the arbitration or trial date. See Tucci, supra, 364 N.J.Super. at 53, 834 A.2d 448 ("A major concern of the Best Practices rules was the establishment of credible trial dates by the avoidance of last-minute or `eve of trial' adjournments by reason of incomplete discovery."); Zadigan v. Cole, 369 N.J.Super. 123, 129, 848 A.2d 73 (Law Div.2004) ("These haphazard extensions [of discovery, prior to `Best Practices'] had a devastating effect on trial date certainty."); Montiel v. Ingersoll, 347 N.J.Super. 246, 253, 789 A.2d 190 (Law Div.2001) ("One clear focus of `Best Practices' was an attempt to deal with the problems previously presented as a result of litigants' failure to complete discovery in a timely fashion, the resulting delays and the problems presented in scheduling cases for arbitration and/or trial on a meaningful basis."). Evidence of the underlying intent of the "Best Practices" rule amendments can be found in Recommendation 4.1 of the Report of the Conference of Civil Presiding Judges on Standardization and Best Practices, 156 N.J.L.J. 80, 82 (April 5, 1999). Therein, the Conference of Civil Presiding Judges emphasized the importance of a clear discovery end date because once "an arbitration or trial date is set, no more discovery must occur, unless authorized by the court on a showing of `exceptional circumstances.'"
In the absence of a scheduled arbitration or trial date, the rigid enforcement of the discovery end date and the mechanical refusal to relax that date even where the adverse party would not suffer irremediable prejudice, would quickly force litigants and their attorneys into the unwarranted circumstance of being required to diligently complete discovery significantly in advance of the court's ability to schedule a meaningful trial date. We are disinclined to believe that the "Best Practices" rules were intended to create a "hurry up and wait" approach to the processing of civil actions. Instead, we are satisfied that the rules remain equipped to allow a trial judge to render substantial justice in all cases and that where the court system is not in a position to schedule a meaningful arbitration or trial date, a sanction that results in a deprivation of a litigant's day in court on the merits is anathema to the *372 fair and efficient administration of justice. We are reminded of Justice Clifford's apt comment that "[o]ur rules of procedure are not simply a minuet scored for lawyers to prance through on pain of losing the dance contest should they trip." Stone v. Old Bridge Tp., 111 N.J. 110, 125, 543 A.2d 431 (1988) (dissenting opinion). The rules do not exist for their own benefit. The rules, instead, are only a framework for the fair and uniform adjudication of cases brought into our system. Ragusa v. Lau, 119 N.J. 276, 283-84, 575 A.2d 8 (1990) (the rules "should be subordinated to their true role, i.e., simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits."). In the present case, because the court had not scheduled a trial date, and because there was no evidence that the scheduling of such a date was imminent and would be delayed by the brief extension of discovery sought by plaintiff, the salutary purposes of the "Best Practices" rule amendments were neither impacted nor jeopardized.
In applying these principles to the present case, we are satisfied that plaintiff raised good and sufficient reasons for a brief extension of discovery. While the record does not fully explain how the prior expert was placed in a conflict of interest warranting his replacement, in the absence of a scheduled trial date and in light of the fact that the prior expert had rendered only a net opinion that would undoubtedly prove fatal to plaintiff's claim, we are satisfied that the trial judge mistakenly exercised his discretion by denying a brief extension of discovery in order to allow plaintiff to submit a new expert report and in order to allow the parties an additional reasonable amount of time necessary to deal with the new report. There was no harm to the administration of justice in the granting of a brief extension because of the absence of a trial date. In addition, any resulting harm faced by Ferreri, who undoubtedly "played the game according to the rules," could have been redressed through some lesser sanction than that which was issued and which proved impermissibly fatal to plaintiff's claim.

IV
We conclude that the trial judge misapplied his discretion by refusing to extend the discovery end date, and reverse and remand for the entry of an order extending the discovery end date for a sufficient period of time to allow plaintiff to serve a new expert report and to allow Ferreri to take such additional discovery as warranted as a result of plaintiff's new expert report. While we have concluded that a refusal to extend discovery or a refusal to consider plaintiff's new expert report are foreclosed as sanctions that may be imposed against plaintiff for delaying the completion of discovery, we nevertheless do not foreclose, upon remand, whether or to what extent the trial judge may, in the sound exercise of his discretion, impose a lesser sanction upon plaintiff. As a result, we also vacate the summary judgment entered in favor of Ferreri because of the trial judge's refusal to consider the content of plaintiff's new expert report, but intimate no view as to the availability of summary judgment upon the completion of discovery. We lastly affirm the order that denied plaintiff's motion for partial summary judgment.
NOTES
[1] Ponden was also joined as a defendant to this action. Plaintiff advises that she was unable to effect service of process on Ponden and the action against him was dismissed, without prejudice, for lack of prosecution.
[2] Plaintiff alleged that Ponden had maintained a longstanding affair with a woman named Wendy from Shanghai who Ponden met while on business in China.
[3] Ponden was employed by Wyeth; Wyeth is a subsidiary of AHP. AHP, Wyeth and Vanguard were named as defendants in this malpractice action, and all successfully moved for summary judgment. In her notice of appeal, plaintiff identified the summary judgment entered in favor of AHP as an order which she sought our review of. Later, plaintiff advised that she had withdrawn her appeal of AHP's summary judgment.
[4] On September 9, 1999, a federal grand jury handed up an indictment that charged Ponden with false swearing, in violation of 18 U.S.C.A. § 152, in connection with a bankruptcy proceeding Ponden filed in 1994. The indictment alleged that Ponden's bankruptcy petition falsely stated that he did not own any stock or interests in any businesses; this statement, according to the federal grand jury, was false in that Ponden had been previously granted stock options in AHP which he exercised on or about April 26, 1999. The record on appeal also indicates the Government's attempts in January 2001 to extradite Ponden from Brazil. The status of this federal indictment and Ponden's whereabouts are not otherwise revealed in the record before us.
[5] We have made no attempt to describe all the actions taken by Ferreri, nor all those things which plaintiff claims he did not do. Instead, we have only briefly outlined some of the allegations that form the basis for plaintiff's claim that Ferreri was negligent in his handling of certain aspects of the divorce action in order to place, in their setting, the procedural events that formed the basis for the dismissal of plaintiff's malpractice claim against Ferreri.
[6] We reject the sufficiency of plaintiff's common knowledge theory, and we assume, without deciding, that the report of plaintiff's first expert was a net opinion.
[7] In Tucci, we were not inhibited in concluding that the trial judge had discretion to issue a lesser sanction than dismissal even though the trial date was scheduled to occur two months later. 364 N.J.Super. at 50-51, 834 A.2d 448.