NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1546-16T4

RONALD J. O'MALLEY,

 Plaintiff-Respondent,

v.

BRIAN NEARY and THE LAW
OFFICES OF BRIAN NEARY,

 Defendants-Appellants.

_______________________________

 Argued April 25, 2017 – Decided June 19, 2017

 Before Judges Fisher, Vernoia and Moynihan.

 On appeal from Superior Court of New Jersey,
 Law Division, Ocean County, Docket No. L-1844-16.

 Peter W. Till argued the cause for appellant.

 Peter A. Kreiner argued the cause for respondent
 (Kreiner & Kreiner LLC, attorneys; Mr. Kreiner, on
 the brief).

PER CURIAM

 Defendants, Brian Neary and The Law Offices of Brian Neary

(conjointly: Neary), were retained on or about June 17, 2009 to
represent plaintiff in a federal criminal prosecution.1 On August

14, 2009, O'Malley also hired the law firm of Walder, Hayden &

Brogan (Walder), with which he signed a separate retainer agreement

for investigatory services regarding the same prosecution.

Plaintiff signed a second retainer with Walder on September 7,

2010 to cover the trial phase. He signed a third retainer

agreement with Walder on February 14, 2012 to cover the appeal of

plaintiff’s sentence. A separate retainer with Neary was signed

by plaintiff on April 16, 2012 for appellate work. Both firms

represented O'Malley during the trial phase and in his appeal

after sentencing.

 On May 17, 2013, O'Malley filed suit against Walder alleging

breach of contract, breach of fiduciary duty, breach of the duty

of good faith and fair dealing, consumer fraud and fraud. Neary

was not named in that suit; nor was he named as a potential party

in a notice pursuant to Rule 4:5-1(b)(2). A deposition subpoena

in the Walder matter was issued to Neary as a non-party. That

deposition was taken on October 21, 2015. The suit against Walder

was subsequently settled on June 3, 2016.

1
 The respective complaints filed by plaintiff against Neary and
Walder Hayden & Brogan provide the facts we here consider. The
complaints were attached to defendants' motion to dismiss.

 2 A-1546-16T4
 O'Malley filed suit against Neary on July 6, 2016, alleging

breach of contract and breach of the duty of good faith and fair

dealing. The following month, Neary moved for dismissal, arguing

that O'Malley's failure to name Neary in the Walder suit barred

this action under the entire controversy doctrine. The motion

judge denied the application and Neary filed a motion for leave

to appeal, which we granted. In this interlocutory appeal, Neary

claims the motion judge failed to consider and properly apply the

entire controversy doctrine. We find insufficient proofs, at

present, to warrant dismissal of the suit pursuant to the entire

controversy doctrine, and affirm the denial of Neary's motion to

dismiss the complaint.

 The entire controversy doctrine is equitably rooted, thus its

applicability is left to judicial discretion based on the

particular circumstances in a given case. Mystic Isle Dev. Corp.

v. Perskie & Nehmad, 142 N.J. 310, 323 (1995); DiTrolio v. Antiles,

142 N.J. 253, 275 (1995); Cogdell v. Hosp. Ctr. at Orange, 116

N.J. 7, 27 (1989). We review a trial court's denial of a motion

to dismiss based on the entire controversy doctrine under the

abuse of discretion standard. See Paradise Enterprises v. Sapir,

356 N.J. Super. 96, 102 (App. Div. 2002) (analogously applying an

abuse of discretion standard to the trial court's application of

 3 A-1546-16T4
the equitable principles of forum non conveniens), certif. denied,

175 N.J. 549 (2003).

 In Kavanaugh v. Quigley, 63 N.J. Super. 153, 158 (App. Div.

1960), this court held:

 It is well settled that discretion means legal
 discretion, in the exercise of which the trial
 judge must take account of the law applicable
 to the particular circumstances of the case
 and be governed accordingly. . . . [I]f the
 trial judge misconceives the applicable law,
 or misapplies it to the factual complex, in
 total effect the exercise of legal discretion
 lacks a foundation and becomes an arbitrary
 act, however conscientious may have been the
 judge in the performance of it. When this
 occurs it is the duty of the reviewing court
 to adjudicate the controversy in light of the
 applicable law in order that a manifest denial
 of justice be avoided.

 The entire controversy doctrine entered a stage of evolution2

in 1998 when the New Jersey Supreme Court approved changes to the

New Jersey Court Rules. Rule 4:30A was amended to eliminate

mandatory party joinder. Party joinder was readdressed by the

adoption of Rule 4:5-1(b)(2).

 Our Supreme Court, in Kent, supra, 207 N.J. at 445, recognized

the interplay between Rule 4:5-1(b)(2) and Rule 4:30A:

2
 The history of the entire controversy doctrine has been well-
documented by a number of courts. See, e.g., Kent Motor Cars,
Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 442-44 (2011);
Olds v. Donnelly, 150 N.J. 424, 432-34 (1997).

 4 A-1546-16T4
 Taken together, both Rule 4:30A and Rule 4:5-
 1(b)(2) advance the same underlying purposes.
 As it relates to claims and to parties, they
 express a strong preference for achieving
 fairness and economy by avoiding piecemeal or
 duplicative litigation. Both, however,
 recognize that the means of accomplishing
 those goals rests with the court. That is,
 Rule 4:30A requires joinder of claims but
 grants authority to a trial judge to create a
 safe harbor in an appropriate case. Similarly,
 Rule 4:5-1(b)(2) requires that names of
 potentially liable or relevant parties be
 disclosed to the court, leaving to it the
 decision about whether to join them or not.

 We consider defendants' motion to dismiss only under the

parameters of Rule 4:5-1(b)(2),3 which mandates that, with the

initial pleading, each party submit a certification advising a

court if any other action is pending or contemplated that relates

to the controversy before the court. If an action is pending or

contemplated, the certification:

 shall identify such actions and all parties
 thereto. Further, each party shall disclose
 in the certification the names of any non-
 party who should be joined in the action
 pursuant to R. 4:28 or who is subject to
 joinder pursuant to R. 4:29-1(b) because of
 potential liability to any party on the basis
 of the same transactional facts.

 [Ibid.]

3
 Despite defendants' claim at oral argument to the contrary, we
believe that the issue in this case involves only party joinder,
i.e., the joinder of Neary to the Walder suit. It does not involve
the joinder of any claim that was not included in the Walder suit.
We need not examine that issue.

 5 A-1546-16T4
The duty to amend the certification is continuing if the facts set

forth therein change. Ibid. Courts may impose sanctions for a

party's failure to comply with the Rule:

 including dismissal of a successive action
 against a party whose existence was not
 disclosed or the imposition on the
 noncomplying party of litigation expenses that
 could have been avoided by compliance with
 this rule. A successive action shall not,
 however, be dismissed for failure of
 compliance with this rule unless the failure
 of compliance was inexcusable and the right
 of the undisclosed party to defend the
 successive action has been substantially
 prejudiced by not having been identified in
 the prior action.

 [Ibid.]

 "The purpose of paragraph (b)(2) . . . is to implement the

philosophy of the entire controversy doctrine." Pressler &

Verniero, Current N.J. Court Rules, comment 2 on R. 4:5-

1(b)(2)(2017). The Kent Court explained how the execution of Rule

4:5-1(b)(2) fosters the aim of the entire controversy doctrine:

 The goals of avoiding piecemeal litigation and
 creating efficiency as related to parties were
 accomplished by substituting the mechanism of
 disclosure for the automatic requirement of
 joinder. That is, a party to any litigation
 is obligated to reveal the existence of any
 non-party who should be joined or who might
 have "potential liability to any party on the
 basis of the same transactional facts." R.
 4:5-1(b)(2). The disclosure obligation
 attaches to each party when filing its first
 pleading and continues thereafter, requiring
 each to file and serve amended certifications

 6 A-1546-16T4
 should facts or circumstances change. Ibid.
 The Rule demands only disclosure, explicitly
 leaving it to the court to decide whether to
 require that notice of the action be given to
 any non-party identified or to compel that
 party's joinder.

 [Kent, supra, 207 N.J. at 444-45 (citations
 omitted).]

 It is within a court's discretion, once noticed of a

potentially related non-party, to compel joinder of that party.

Id. at 445-46.

 The motion judge found that the instant suit involved

different transactional facts than did the Walder suit, and ended

its analysis there. The judge did not make findings as to whether

the failure to submit a certification pursuant to Rule 4:5-1(b)(2),

disclosing Neary as a non-party who had potential liability in the

Walder suit, was inexcusable. Nor did the court determine if

Neary's right to defend plaintiff's action was "substantially

prejudiced by not having been identified in the prior action." R.

4:5-1(b)(2).4

4
 In his initial ruling, the motion judge found that the dismissal
of the action "would create a significant prejudice against the
plaintiff if the plaintiff's allegations pan out." No finding as
to prejudice against the defendants was made at that time. At a
subsequent hearing, the judge reiterated his finding. When
plaintiff's counsel pointed out that defendants had to show
substantial prejudice, the court said, "Well, I figured that
implicit in my finding that there's substantial prejudice against
the plaintiff is that there's insubstantial prejudice against the

 7 A-1546-16T4
 We briefly examine the two prongs of Rule 4:5-1(b)(2).

 A.

 Plaintiff now contends that he did not comply with the notice

requirements of Rule 4:5-1(b)(2) because defendants willfully

failed to provide plaintiff with invoices, and that the factual

transactions in the Neary and Walder suits were discrete.

 The entire controversy doctrine sprang from the

constitutional principle that courts should create rules to ensure

that matters in controversy be efficiently and completely

determined. Kent, supra, 207 N.J. at 442-43 (citing N.J. Const.

art. VI, § III, ¶ 4). In the context of the 1998 rule changes

involving the party joinder aspect of the doctrine, the Kent court

declared that "the Rule demands only disclosure," id. at 445, and

held:

 The ultimate authority to control the joinder
 of parties and claims remains with the court;
 the parties may not choose to withhold related
 aspects of a claim from consideration, see,
 e.g., Hobart Bros. Co. v. Nat'l Union Fire
 Ins. Co., 354 N.J. Super. 229, 240-41 (App.
 Div. 2002) (quoting Oltremare v. ESR Custom
 Rugs, Inc., 330 N.J. Super. 310, 315 (App.
 Div. 2000)), nor may they decline to reveal
 the existence of other parties in an effort
 to achieve an advantage.

 [Id. at 446.]

defendants." The judge did not reveal the facts underpinning his
finding.

 8 A-1546-16T4
 The Rule requires parties to give notice even if the nexus

to the potential party is not clear. Compliance with the Rule

allows courts to monitor the status of that party vis-à-vis pending

litigation. A judge can ascertain if any nexus between the

potential party and the pending suit is revealed during the course

of discovery. The procedure allows a court to address entire

controversy doctrine issues early on—certainly before the pending

case is settled or tried—and to avoid motions to dismiss based on

the doctrine, and the appeals that follow. A court can exercise

its prerogative to require joinder or allow a separate cause of

action against a potential party only if notice is given.

 There are insufficient proofs, at this early stage of

litigation, to determine if the failure to give the Walder court

notice of the instant suit was inexcusable. Neary has not provided

O'Malley with invoices for the services rendered, thus no

comparison of the services provided to O'Malley by both firms can

be made. While the deposition of Brian Neary may have, arguably,

established that Neary and Walder were O'Malley's co-counsel in

the criminal prosecution, it did nothing to foster a comparison

of services, or to establish that the suits against each lawyer

were based on the same transactional facts. O'Malley's letter5 to

5
 This letter was included in Neary's appendix, but we do not see
that it was considered by the motion judge. In the appendix, it

 9 A-1546-16T4
Neary, dated November 26, 2012, gives some insight into O'Malley's

grievances against Neary on that date, but does not establish a

link between the suits.

 B.

 In light of our holding regarding the first prong of Rule

4:5-1(b)(2), we need not determine if defendants suffered

substantial prejudice to justify the dismissal of this case under

the second prong of the Rule.

 Our Supreme Court has recognized that "substantial prejudice"

can include the loss of evidence or other proofs needed to defend

a suit, or an increase in damages occasioned by a separate action.

Kent, supra, 207 N.J. at 446-48.

 Defendants advance that they have been prejudiced because

they were "denied the opportunity to participate in discovery and

to develop defenses in the broader litigation context involving

all of the participants." Defendants do not specify the discovery

or defenses to which they refer. They do not indicate the reason

discovery cannot now be obtained, or defenses cannot now be

asserted. In any event, it is unnecessary to determine if

defendant demonstrated substantial prejudice because we have

is attached to counsel's reply certification filed in connection
with Neary's motion to dismiss the complaint. We take note of it
as part of the documents that appear to have been submitted to the
motion court.

 10 A-1546-16T4
concluded the record does not permit a finding that the failure

to identify Neary was inexcusable under the first prong of Rule

4:5-1(b)(2).

 C.

 The Rule proscribes dismissal of a successive suit unless

both inexcusable failure to comply with the notice provision and

substantial prejudice are established by the undisclosed party.

Even if both prongs are proved, courts may, instead, consider

sanctions. 6 The basis for the imposition of less draconian

remedies follows long-standing jurisprudential tenets. As we

explained in Alpha Beauty v. Winn-Dixie Stores, 425 N.J. Super.

94, 102 (App. Div. 2012):

 Our Court Rules, from their inception, have
 been understood as "a means to the end of
 obtaining just and expeditious determinations
 between the parties on the ultimate merits."
 Ragusa v. Lau, 119 N.J. 276, 284 (1990)
 (quoting Tumarkin v. Friedman, 17 N.J. Super.
 20, 27 (App. Div. 1951), certif. denied, 9
 N.J. 287(1952)); see also Ponden v. Ponden,
 374 N.J. Super. 1, 9-10 (App. Div. 2004),
 certif. denied, 183 N.J. 212 (2005); Tucci v.
 Tropicana Casino and Resort Inc., 364 N.J.
 Super., 48, 53 (App. Div. 2003). As a result,
 the Supreme Court has recognized a "strong
 preference for adjudication on the merits
 rather than final disposition for procedural
 reasons." Galik v. Clara Maass Med. Ctr., 167
 N.J. 341, 356 (2001) (quoting Mayfield v.

6
 Defendants did not request, and the trial court did not consider
sanctions, only dismissal.

 11 A-1546-16T4
 Cmty. Med. Assocs., P.A., 335 N.J. Super. 198,
 207 (App. Div. 2000)).

 The party asserting the entire controversy doctrine as a

defense, bears "the burden of establishing both inexcusable

conduct and substantial prejudice." Hobart Bros. v. Nat'l Union

Fire Ins. Co., 354 N.J. Super. 229, 242 (App. Div.), certif.

denied, 175 N.J. 170 (2002). Defendants, on this record, have not

met that burden and dismissal of the suit against Neary is not

warranted.

 The order under review is affirmed, although we do not

foreclose the trial court's later reconsideration of these

principles, if appropriate, upon receiving a better understanding

about the facts and allegations and their relationship to the

prior suit against Walder. We do not retain jurisdiction.

 12 A-1546-16T4