**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1177-17T2

LORETA ORBEA,

     Plaintiff-Appellant,

v.

ROGER B. BUTLER, and
PERFORMANCE LOGISTICS,
LLC,

     Defendants-Respondents.

_____

Submitted October 22, 2018 – Decided April 1, 2019

Before Judges Sabatino and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1398-14.

Hegge & Confusione, LLC attorneys for appellant (Michael J. Confusione, of counsel and on the brief).

Thompkins, McGuire, Wachenfeld & Barry, LLP, attorneys for respondents (Joseph K. Cobuzio, of counsel and on the brief; Kimberly D. McDougal, on the brief).

PER CURIAM

This matter arises from a jury verdict after the trial of plaintiff Loreta Orbea's personal injury lawsuit in which she sought damages for injuries she sustained in an August 28, 2013 motor vehicle accident. Although the jury found in her favor, plaintiff contends that the jury's award of $27,500 was inadequate to compensate her for her injuries and resulting pain and suffering. In that regard, plaintiff asserts that the pretrial judge erred in denying an extension of discovery and concluding that her significant ongoing treatment did not constitute exceptional circumstances as defined by Vitti v. Brown, 359 N.J. Super. 40 (Law Div. 2003). Relatedly, plaintiff asserts that the trial judge erred in excluding all evidence of treatment for back injuries after the 2013 accident, including evidence that she had recently undergone a two-level lumbar fusion.

We find that the effect of these two rulings deprived the jury of an opportunity to assess the full extent of plaintiff's alleged injuries and render its own determination as to the etiology of plaintiff's complaints and her need for surgery. Because the evidence was essential to a full and fair presentation of plaintiff's case, its exclusion was clearly capable of producing an unjust result. Accordingly, we reverse and remand for a new trial.

I.

On August 28, 2013, plaintiff's car was stopped at a stop sign in a Target parking lot when a tractor-trailer driven by defendant Roger Butler, an employee of defendant Performance Logistics LLC, struck her vehicle. The impact allegedly pushed plaintiff's vehicle to the curb. In the year following the accident, plaintiff's complaints centered on her right shoulder, for which she ultimately received surgery to correct a rotator cuff tear on June 26, 2014.

Significant to the issues in this appeal, plaintiff was involved in an earlier 2009 car accident in which she sustained injuries. In 2012, plaintiff had a lumbar fusion surgery related to the 2009 accident performed by Dr. Frank Moore. Although she did not immediately experience complaints related to her lumbar spine after the 2013 accident, plaintiff testified at her deposition that sometime in or around 2014 she returned to Dr. Moore complaining of a recurrence of back pain. Dr. Moore ordered follow up radiological studies and prescribed pain medication. In December 2015, plaintiff saw Dr. Louis Quartaroro of New Jersey Spine Institute, again complaining of severe lower back pain and swelling.

During plaintiff's March 2016 deposition, she testified that:

> I started feeling my lower back pain again. My back started getting swollen. A year after I had the fusion I

was able to get up to see or if I was watching TV I was able to get up like normal. A year after I had this then the pain came back. I wasn't able to get up like I used to. The pain gets down my butt and then my leg and I feel like something is rubbing like two bones rubbing to each other.

On June 16, 2016, plaintiff consulted Dr. Steven P. Waldman, M.D., a board certified pain management doctor, to address her worsening lumbar complaints. Dr. Waldman concluded that in addition to the rotator cuff tear, plaintiff sustained an exacerbation of her prior disc injuries as a result of the August 28, 2013 accident.

As a result of her worsening lumbar complaints, Plaintiff filed a motion to reopen discovery returnable June 10, 2016. While the motion was pending, the June 1, 2016 discovery end date expired. On June 8, 2016, the parties attended a case management conference with the presiding judge of the civil division, in which plaintiff's counsel alerted the court that plaintiff was now considered a potential candidate for spinal surgery. Counsel advised that a motion returnable June 10, 2016 was pending, which sought to reopen and extend discovery to address plaintiff's ongoing treatment. On June 10, 2016, nine days after the discovery period had expired, the presiding civil judge denied plaintiff's motion, noting on the order that

> Motion is untimely filed under R. 4:24-2. Information on joint fusion surgery is too vague and of dubious causal connection to this accident. Lack of exceptional circumstances. Removed from arbitration.

The judge did not categorically rule out that discovery might be extended if plaintiff actually had the surgery, having noted two days before at the June 8, 2016 case management conference that "[I] typically don't grant motions like this when someone has a recommendation for surgery but not an actual date scheduled."

Thereafter, the trial was adjourned three times, once by plaintiff, once by defendant, and once due to court error. In an April 24, 2017, letter plaintiff's counsel advised the judge and defense counsel that plaintiff had undergone a two-level lumbar fusion on March 31, 2017 and requested an opportunity to reopen and extend discovery. In an April 26, 2017 telephonic case management conference, defense counsel strenuously objected to this last-minute request, asserting he had reasonably relied on the court's June 10, 2016 order denying an extension of discovery, and in particular the court's finding in June 2016 that there was a dubious causal relationship between plaintiff's lumbar condition and the 2013 accident. In response, the judge responded that defense counsel was "reading too much into my order." The judge stated:

5

> [Plaintiff's counsel is] right to point out that the June 2016 order merely denied an extension of discovery. It didn't bar any claims or proofs, it just – I didn't see enough at that time to extend things and reopen it. So there isn't an appellate panel in this State that would countenance me telling you, too bad, see you next Tuesday, try your case and she doesn't get to talk about her surgery. <u>It's just not going to happen, nor should it. It wouldn't be fair.</u>
>
> [(Emphasis added).]

The court adjourned the trial and directed plaintiff's counsel to make a formal motion to reopen discovery.

On June 7, 2017, plaintiff's counsel filed a motion to reopen and extend the discovery end date. In support of the motion, plaintiff's attorney certified that plaintiff had undergone a two-level lumbar fusion on March 31, 2017. The certification attached as exhibits medical records of consultations and testing in the five months prior to the surgery, as well as the operative report of the surgery itself. Counsel certified that this significant ongoing treatment was an exceptional circumstance that warranted relief reopening and extending discovery. By order dated June 23, 2017, the court denied the motion for failure to attach a copy of the prior order as required by <u>Rule</u> 4:24-1(c). Plaintiff's counsel did not rectify this failure by supplying the court with the missing order or otherwise seeking reconsideration at any time prior to the new trial date.

Trial was then scheduled for September 25, 2017. The trial judge granted defendants' motion in limine to exclude all testimony regarding plaintiff's back injury at trial. The trial judge observed that he did not have much discretion because of the presiding judge's June 23, 2017 ruling. The ruling in limine excluded any and all references to complaints or treatment related to plaintiff's back. Plaintiff indicated that she would respect the judge's ruling, but commented, with the court's permission and without objection, that

> If I cannot mention the surgery because I had the surgery too late when I found a good doctor, it is okay. I am willing not to mention that.
> But I don't think it is fair that I cannot say all the pain that I have gone through because of this accident including my back which is the main problem I have as of right now.
> I have a shoulder problem, yes, but my back, it is incredible that I cannot say what happened to me in that accident, and just because I have a pre-existing condition, yes, I did have a fusion before, but that accident, because of that accident I had another fusion…[.]

The trial judge, however, adhered to his ruling that "the back is not part of this case" and "essentially this is a torn rotator cuff case."

Defendant conceded liability in opening statements and the trial proceeded on the issue of damages and proximate causation. Plaintiff testified about the happening of the accident and her treatment for her right shoulder

7

injury, which included physical therapy, medication and arthroscopic surgery. Consistent with the court's ruling in limine, plaintiff did not testify about her recent back surgery or any back complaints or limitations after the 2013 accident.

On cross-examination, defense counsel selectively took advantage of the limitation imposed by the court by impeaching plaintiff's credibility using records from her 2009 accident related to shoulder and back complaints, while deliberately omitting any reference to plaintiff's recent treatment related to her back.

> Q: Ms. Orbea, I want to focus on before this accident. August—before August 28, 2013.
> I want to focus on the accident where you were involved where you were hit by a drunk driver in 2009.[1]
> A: Yes.
> Q: And the accident was a rear end hit, pushed you into another vehicle, and you sustained injury, is that correct?
> A: Yes, I did.
> Q: And we are referring to it for this trial as other problems, the injuries you sustained in that accident.
> That is what your testimony was, the other problems, correct?
> A: Could you repeat that question?

---

[1] Although there was no objection to the repeated reference of a drunk driver in the 2009 accident, we observe that the driver's alleged intoxication was irrelevant and is ordinarily inadmissible. See Gustavson v. Gaynor, 206 N.J. Super. 540, 545 (App. Div. 1985).

Q: Yes. You have used twice, one where you were describing the Vicodin that you are taking, that you also take it for other problems.

A: Yes.

Q: Do we have an understanding?

A: I don't have an understanding.

Q: The injuries you sustained in the drunk driver that you sustained in 2009 we are referring to as "other problems" in this trial, is that correct?

A: Do I have to say the truth?

Q: Correct, yes or no?

A: Don't—

Q: Don't get caught?

. . . .

Q: I will repeat the question, Ms. Orbea. The injuries you sustained in 2009 as a result of being rearended by a drunk driver we are calling for today's trial the "other problems," is that your testimony?

A: No, that is not my testimony.

The jury then heard testimony from plaintiff's treating doctor Fred Lee, M.D., and the defense examiner, Thomas Edward Helbig, M.D. Both physicians testified about their physical examinations, review of MRI films and x-rays, Dr. Lee's treatment and their respective opinions about diagnosis, causal relation, and prognosis for plaintiff – all carefully limited to the right-shoulder injury in accordance with the trial court's ruling.

After trial, the jury returned a verdict in favor of the plaintiff, finding by a vote of six to zero that plaintiff sustained an injury that was proximately caused

by the accident, and fixing damages, again by a vote of six to zero, at $27,500. This appeal followed.

## II.

Denial of motion to reopen discovery

On appeal, plaintiff first contends that the trial court erred in denying her June 23, 2017 motion to reopen discovery. The decision whether to reopen or extend the period of discovery is reviewed for abuse of discretion. Leitner v. Toms River Reg'l Sch., 392 N.J. Super. 80, 87 (App. Div. 2007). "Our standard of review is limited to a determination of whether the trial court mistakenly exercised its discretion in denying plaintiff's motion for an extension of the discovery period under R. 4:24-1(c)." Huszar v. Greate Bay Hotel & Casino, Inc., 375 N.J. Super. 463, 471-72 (App. Div.), certif. granted and remanded, 185 N.J. 290 (2005).

Our system of justice favors the fair disposition of cases on their merits. See Viviano v. CBS, Inc., 101 N.J. 538, 547 (1986); Stanley v. Great Gorge Country Club, 353 N.J. Super. 475, 486 (Law Div. 2002). On the other hand, the system also strives to make litigation "expeditious and efficient." Leitner, 392 N.J. Super. at 91. The Rules of Court are designed to achieve, among other goals, certainty in trial dates. Ibid. As we have recognized, however,

exceptional circumstances can arise, where trial dates or other litigation deadlines should be extended in the interests of justice and to avoid punishing litigants unfairly. Id. at 91-94. The fair balance between fairness and trial-date certainty is reflected in Rule 4:24-1(c) governing extensions of discovery, which provides in pertinent part:

> The parties may consent to extend the time for discovery for an additional 60 days by stipulation filed with the court or by submission of a writing signed by one party and copied to all parties, representing that all parties have consented to the extension. If the parties do not agree or a longer extension is sought, a motion for relief shall be filed . . . and made returnable prior to the conclusion of the applicable discovery period. . . . [I]f good cause is otherwise shown, the court shall enter an order extending discovery. . . . No extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown.
>
> [(Emphasis added).]

Because the Rule does not define "exceptional circumstances," in Vitti, the court set forth a four-part test that must be satisfied in order to establish "exceptional circumstances." 359 N.J. Super. at 51. Specifically, a party must show

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's

11

failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

[Rivers v. LSC P'ship, 378 N.J. Super. 68, 79 (App. Div. 2005) (citing Vitti, 359 N.J. Super. at 51).]

Plaintiff must provide "[a] precise explanation that details the cause of delay and what actions were taken during the elapsed time[.]" Bender v. Adelson, 187 N.J. 411, 426 (2006).

In Vitti, the defendants made a motion to extend discovery "more than six weeks after the discovery end date." 359 N.J. Super. at 42. The defendants, believing the plaintiff would release them after settling with the codefendant, did not depose the plaintiff or obtain its own independent medical examination. Id. at 43. The court found that the plaintiff never indicated that he was abandoning his claims against Brown and that defense counsel's miscalculation of the risk that the plaintiff would proceed against his client after settling with the codefendant did not rise to exceptional circumstances under the rule. See id. at 52-53. The court found that although deposing the plaintiff and obtaining an independent medical examination would be "helpful" to the defendant's case, the sought-after additional discovery was not essential, and the defendant

12

offered no explanation for his failure to pursue any discovery whatsoever in the time provided. Ibid.

The Vitti court contrasted the facts in that case with cases involving significant ongoing medical treatment after a trial or arbitration date is fixed.

> There may be any number of situations in which one may be able to establish exceptional circumstances relatively simply. There is one problem often encountered in personal injury litigation that illustrates that point. It is not unusual for a personal injury claimant to be involved in ongoing medical treatment or diagnosis, as litigation is proceeding through discovery, which might result in some sudden and unexpected change in the claimant's condition. Typically, a claimant may be presented with the need for surgery which had not been anticipated. To the extent those developments were reasonably anticipated during the discovery period, one would expect an application to extend the time for discovery to be filed before discovery ends. Assuming the additional treatment or new diagnosis truly requires discovery or disclosure, good cause could easily be established. Similarly, it would not be difficult to establish exceptional circumstances, if the treatment or diagnosis could not have been anticipated during the discovery period. In that circumstance, it could presumably be established that the attorney and litigant had no control over the situation. The failure to complete the discovery at issue within the original discovery period and the failure to file the motion to extend within that time could be easily explained.
>
> [Id. at 52 (emphasis added).]

This case presents the factual scenario envisioned by the court in <u>Vitti</u>. Plaintiff's back complaints were evolving throughout the litigation, and she was receiving ongoing treatment for her back. That treatment unexpectedly culminated in plaintiff's undergoing a two-level lumbar fusion in March 2017. Although plaintiff had been deemed a potential candidate for surgery in June 2016, the court at that time denied the motion to extend, noting the uncertainty of when if ever plaintiff would actually undergo the procedure, and the perceived insufficiency of proof that the 2013 accident was a causal factor of plaintiff's back complaints.

In the interim, plaintiff repeatedly amended her interrogatories with new information regarding her medical treatment accompanied by the appropriate certification pursuant to <u>Rule</u> 4:17-7, which provides:

> Except as otherwise provided by <u>R.</u> 4:17-4(e), if a party who has furnished answers to interrogatories thereafter obtains information that renders such answers incomplete or inaccurate, amended answers shall be served not later than 20 days prior to the end of the discovery period, as fixed by the track assignment or subsequent order. Amendments may be allowed thereafter only if the party seeking to amend certifies therein that the information requiring the amendment was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date. In the absence of said certification, the late amendment shall be disregarded by the court and adverse parties. <u>Any challenge to the certification of</u>

> due diligence will be deemed waived unless brought by way of motion on notice filed and served within 20 days after service of the amendment. Objections made thereafter shall not be entertained by the court. All amendments to answers to interrogatories shall be binding on the party submitting them. A certification of the amendments shall be furnished promptly to any other party so requesting.
>
> [(Emphasis added).]

Defendants never formally objected to the amendments, based on their intention to move to bar the materials at trial in reliance on the court's June 10, 2016 and June 23, 2017 orders.

When plaintiff underwent the surgery on March 31, 2017, plaintiff's counsel promptly moved to reopen discovery. As noted, the motion was denied based on a procedural deficiency- the failure to attach the prior order extending discovery as required by Rule 4:24-1(c). It would have been preferable for plaintiff's counsel to cure the deficiency by supplying the omitted order or otherwise moving for reconsideration, and his failure to do so undoubtedly contributed to the trial court's having never addressed the substantive issue as to whether exceptional circumstances existed to warrant reopening discovery. In light of the magnitude of the impact in this particular case of disallowing post-surgery discovery, however, we will address the issue whether plaintiff had

shown exceptional circumstances to extend discovery, the denial of which warrants a new trial.[2]

Here, addressing the four prongs of the exceptional circumstances test, it is clear that the reason discovery was not completed within the initial discovery period was because most of plaintiff's significant treatment occurred after the discovery end date had expired; indeed, the lumbar surgery occurred only a couple of months before the final motion to reopen discovery was filed. Plaintiff was reasonably diligent throughout the litigation in obtaining reports and serving medical discovery as it became available. Cf. Rivers, 378 N.J. Super. at 80-81 (exceptional circumstances not established where plaintiff's counsel failed to pursue discovery from defendant and obtain an expert report in a timely manner). Plaintiff cooperated by appearing at depositions and defense exams as requested. The timing of the surgery was beyond the control of the litigant, and the evidence was essential to a fair and complete presentation of her injuries to the jury. Unfortunately, because the court denied the motion based on a procedural deficiency, the court never analyzed whether or not plaintiff had met

---

[2]   Our decision should not be read as supporting a proposition that any post-discovery treatment would constitute exceptional circumstances; to the contrary, as defined by Vitti, it is only significant ongoing treatment that warrants an extension beyond that contemplated by the Rules of Court.

the exceptional circumstances standard, a standard the court preliminarily suggested would be met at the April 26, 2107 telephonic conference. Nonetheless, on the specific facts of this case, we find that the motion should have been granted as there were exceptional circumstances as defined by <u>Vitti</u> warranting a brief extension of discovery. The denial of such relief was a rare misapplication of discretion, albeit aided by plaintiff's failure to attach prior orders to the motion papers.

<u>The court's order in limine barring introduction of any evidence of plaintiff's back complaints or treatment</u>

For the same reasons, the trial court's reliance on the June 23, 2017 order to bar any mention of complaints or treatment to the back deprived plaintiff of a fair and just adjudication of the merits of her claims.

With respect to the trial court's evidentiary rulings, we generally will not set them aside unless the court has abused its discretion, including with respect to issues of the admissibility of expert opinion. <u>Hisenaj v. Kuehner</u>, 194 N.J. 6, 16 (2008); <u>see also</u> <u>Dinter v. Sears, Roebuck & Co.</u>, 252 N.J. Super. 84, 92 (App. Div. 1991). Trial errors that were brought to the attention of the court are reviewed for harmful error. "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result [.]" <u>R.</u> 2:10-2. Thus, if a trial court is found to have

17

abused its discretion, or otherwise erred, we must then determine whether that error amounted to harmful error. State v. Prall, 231 N.J. 567, 581 (2018).

Allowing the introduction of the back surgery evidence may have significantly changed the calculus of the trial. At the outset, the court's in limine ruling prevented plaintiff from explaining, in response to questions on cross-examination, that some of her current complaints and need for medication were related to her recent lumbar fusion, while defense counsel remained free to suggest, unchallenged, that all of plaintiff's "other problems" stemmed from the 2009 accident. Moreover, while it is uncertain what credence the jury would have given the excluded evidence, barring all of the evidence was clearly capable of creating an unjust result. As plaintiff's back complaints were severe enough to require surgery prior to trial, the jury should have been able to consider plaintiff's back injuries and make its own determination whether those injuries were causally related to the accident. In that regard, we cannot say with any degree of confidence that the jury award reflected a complete assessment by the jury of plaintiff's condition. That is particularly so in a case where defendant conceded liability and the jury unanimously found that plaintiff suffered injuries proximately caused by the accident and unanimously awarded her damages.

We are sensitive to the trial court's desire and obligation to expeditiously move cases. See R. 1:33-6(b) ("[T]he Presiding Judge of each functional unit within the vicinage shall be responsible for the expeditious processing to disposition of all matters filed within that unit."); see also R. 4:5B-2 (noting trial court's authority to conduct case management conference to "promote the orderly and expeditious progress of the case."). Moreover, we recognize that in this case, plaintiff's counsel's failure to seek reconsideration of the order contributed to the trial court's having never addressed the substantive issue whether exceptional circumstances existed to warrant reopening discovery.

However, as we have previously stated:

> [W]e are satisfied that the rules remain equipped to allow a trial judge to render substantial justice in all cases and that where the court system is not in a position to schedule a meaningful arbitration or trial date, a sanction that results in a deprivation of a litigant's day in court on the merits is anathema to the fair and efficient administration of justice. We are reminded of Justice Clifford's apt comment that "[o]ur rules of procedure are not simply a minuet scored for lawyers to prance through on pain of losing the dance contest should they trip." Stone v. Old Bridge Tp., 111 N.J. 110, 125 (1988) (dissenting opinion). The rules do not exist for their own benefit. The rules, instead, are only a framework for the fair and uniform adjudication of cases brought into our system. Ragusa v. Lau, 119 N.J. 276, 283-84 (1990) (the rules "should be subordinated to their true role, i.e., simply a means to the end of obtaining just and expeditious

determinations between the parties on the ultimate merits.").

[Ponden v. Ponden, 374 N.J. Super. 1, 10-11 (App. Div. 2004).]

Thus, we conclude that under the particular facts of this case, the exclusion of the evidence regarding plaintiff's lumbar fusion deprived plaintiff of a fair adjudication of her case on the merits. Because the omission of this evidence was clearly capable of producing an unjust result, R. 2:10-2, we are constrained to reverse and remand for a new trial.

Defense cross-examination based on prior specific statements to her employer

Finally, Plaintiff argues that the verdict should be overturned based on defense counsel's cross-examination of plaintiff about her decision to not tell her employer, the North Bergen Board of Education, that she moved from North Bergen to Fairview. Plaintiff testified that she did not tell the Board about this move because there was a requirement that teachers live in North Bergen and she was concerned about losing her job. Defendants used this testimony to argue at closing that plaintiff is untruthful and that the jury should not trust her testimony. Because there was no objection to this aspect of the cross-examination or defense counsel's comments in summation, we must consider

20

under a plain error standard whether admitting the evidence gave rise to a manifest justice requiring reversal. R. 2:10-2.

In State v. Scott, the Supreme Court reemphasized that N.J.R.E. 405 and 608 "preclude the use of specific instances of conduct to attack the credibility of a witness." 229 N.J. 469, 481 (2017). Rule 405 states "[s]pecific instances of conduct not the subject of a conviction of a crime shall be inadmissible" but specific instances may also be admitted "[w]hen character or a trait of character of a person is an essential element of a charge, claim, or defense." N.J.R.E. 405. Rule 608 provides that "a trait of character cannot be proved by specific instances of conduct" unless "otherwise provided by Rule 609 [Impeachment by Evidence of Conviction of Crime]" or attacking credibility of a witness based on "a prior false accusation against any person of a crime similar to the crime with which defendant is charged." N.J.R.E. 608. In Scott, the Court stated that "Rule 608 explicitly excludes specific instances of conduct as a means of proving a character for untruthfulness, permitting only opinion or reputational evidence." 229 N.J. at 483. Plaintiff also points out that evidence may be omitted when "its probative value is substantially outweighed by the risk . . . of undue prejudice." N.J.R.E. 403.

Defendants argue that they were entitled to impeach plaintiff, and that plaintiff opened herself up to this line of questioning because on direct she testified that she lived in Fairview. As defendants note, Rule 607 allows parties to "examine the witness and introduce extrinsic evidence relevant to the issue of credibility." N.J.R.E. 607. However, that rule is by its terms subject to the limitation in Rules 405 and 608.

Here, defendants' questions on cross-examination did not go to the truthfulness of plaintiff's testimony that she lives in Fairview. Cf. Allendorf v. Kaiserman Enters., 266 N.J. Super. 662, 674 (App. Div. 1993) ("[T]he evidence that plaintiff had episodes of passing out prior to the accident was admissible for the purpose of impeaching the credibility of her testimony that she was 'in perfect health' and had never had 'any problem with blacking out' prior to the accident."). Rather, the questions sought to elicit testimony that on some prior occasion plaintiff allegedly lied about living in North Bergen. Thus, rather than impeaching plaintiff's testimony at trial, defendants sought to introduce a specific instance of conduct to show plaintiff's general character for untruthfulness. Pursuant to Rules 405 and 608, as interpreted by Scott, this was clearly impermissible.

Nonetheless, "if an issue was not raised below by a party's trial counsel, relief is not warranted unless that party demonstrates plain error by showing on appeal the error was 'clearly capable of producing an unjust result.'" Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 502 (App. Div. 2017) (quoting R. 2:10-2). Guided by the plain error standard, we do not find that the admission of the prohibited evidence was sufficient to warrant reversal in this case.

At the outset, "the '[f]ailure to make a timely objection indicates that [plaintiff's] counsel did not believe the remarks were prejudicial at the time they were made,' and it 'also deprives the court of the opportunity to take curative action.'" Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 523 (2011) (quoting Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009)). Moreover, defendants did not rely solely on the prohibited evidence to further their argument that plaintiff was untruthful. Rather, counsel cited to several other contradictions and/or inconsistencies between her statements to medical providers and her testimony at trial to show that plaintiff has a tendency to lie. Finally, and perhaps most tellingly, the jury returned a reward of $27,500 for a case that centered on a torn rotator cuff, which suggests the jury rejected defense counsel's argument that plaintiff could not be believed. Therefore, we decline

to reverse the verdict based on the Rule 608 violation, which we presume will not be repeated at any retrial.

## III.

For the reasons expressed above, we conclude that plaintiff is entitled to a new trial based on the trial court's denial of an extension of discovery and ruling in limine excluding all evidence of plaintiff's treatment for back injuries after the 2013 accident.

Reversed and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1177-17T2