919 A.2d 899 (2007)
392 N.J. Super. 80
Cheryl LEITNER and Sandra Kipp, Plaintiffs-Appellants,
v.
TOMS RIVER REGIONAL SCHOOLS, Mrs. Fernandez, Mr. Azzdini, Mr. Rittica and Mr. Cohut, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2007.
Decided April 13, 2007.
Michael H. Nieschmidt, Hightstown, argued the cause for appellants.
Michael J. Gilmore argued the cause for respondents (Gilmore & Monahan, attorneys; Mr. Gilmore, on the brief).
Before Judges STERN, COLLESTER and LYONS.
The opinion of the court was delivered by
LYONS, J.S.C. (temporarily assigned).
Plaintiffs, Cheryl Leitner and Sandra Kipp, mother and daughter, sued the Toms *900 River Regional Schools ("TRRS") and various school officials alleging violations of the Law Against Discrimination ("LAD") and the Americans with Disabilities Act ("ADA"). On September 9, 2005, the trial court denied plaintiffs' application to extend discovery. On October 21, 2005, the court granted TRRS' motion to dismiss as to the individual defendants, and on February 8, 2006, the court entered an order for summary judgment in TRRS' favor. Plaintiffs appeal those orders. Because we find the trial court mistakenly exercised its discretion in denying the requested discovery extension, we reverse and remand. The following factual and procedural history is relevant to our consideration of the issues advanced on appeal.
Plaintiffs filed their complaint on March 3, 2004. The complaint was served on TRRS on April 14, 2004, and an answer was filed by TRRS on June 2, 2004. In the initial complaint, four individuals were named, as were a number of "John Does." The four individuals named were Mrs. Fernandez, Mr. Azzdini, Mr. Rittica and Mr. Cohut. They were referred to in the complaint as "employees and/or supervisors" of TRRS. Plaintiffs attempted service on all four of these individuals by serving TRRS. Counsel for TRRS advised plaintiffs at that time that it would not accept service since it was improper under the Rules and since the individuals were not appropriately and clearly identified.
The case was assigned to Track III pursuant to R. 4:24-1(a) and August 26, 2005 was set as the discovery end-date. TRRS served uniform interrogatories as well as supplementary interrogatories on the plaintiffs. Plaintiffs answered the uniform interrogatories on November 11, 2004, but never supplied answers to the supplementary interrogatories. The supplementary interrogatories sought the correct identities of the four individuals named in the complaint, as well as the factual bases for the LAD and ADA alleged violations.
In the interrogatory answers provided to TRRS, plaintiffs identified Mrs. Fernandez as the Intermediate East Middle School cheerleading coach. Mr. Kohut was identified as a teacher who taught plaintiff, and Mr. Azzolini and Mr. Ritacco were identified as supervisors.[1]
Plaintiffs received over 450 pages of documents from TRRS voluntarily in November 2004 in preparation for court ordered mediation. The mediation was never conducted. TRRS deposed plaintiffs on February 3, 2005. In February 2005, during plaintiffs' deposition, the individual referred to as Mr. Rittica in the complaint was identified as Mr. Ritacco and his position as that of superintendent. The individual referred to as Mr. Azzdini in the complaint was identified as Mr. Azzolini and was said to be a principal. The individual referred to as Mr. Cohut in the complaint was identified as Mr. Kohout and he was named as plaintiffs' biology teacher.
On June 9, 2005, plaintiffs' counsel wrote to TRRS' counsel and asked that counsel provide the addresses of the individuals named in the complaint and employed by TRRS so that plaintiff could serve them. Counsel referred to an earlier conversation between them held at the February deposition. Plaintiffs' counsel also asked TRRS' counsel to provide available dates and times for the depositions of the individuals named in the complaint and a TRRS representative as soon as possible. On June 13, 2005, TRRS' counsel responded by letter. Counsel stated that plaintiffs' counsel never forwarded any information *901 regarding the correct identity of the individuals sought to be served, nor did plaintiffs' counsel amend his pleadings to correctly name the individuals alleged to be involved. He pointed out that plaintiffs' counsel did not serve any interrogatories or notices to produce on TRRS. Counsel also pointed out in the letter that plaintiffs had not taken any significant action in the matter since the February deposition. Counsel concluded by saying he was not going to try to guess at the identity of the individuals and that since the discovery end-date was August 26, 2005, he would not consent to an amendment of the pleadings or to a deposition schedule.
On August 3, 2005, pursuant to R. 4:24-1(c), plaintiffs filed a motion to extend discovery. The motion was filed returnable on August 19, 2005.[2] There was no arbitration or trial date set at that time.
On the return date of the motion, plaintiffs argued that good cause was shown for the extension, since there would be prejudice to plaintiffs who did not yet have the correct full names of the individual defendants and there was a need to conduct further discovery to obtain those names as well as to ascertain additional facts critical to their suit. Plaintiffs also argued that while "good cause" needs to be shown for the extension under R. 4:24-1(c), the rule allows a sixty-day extension by consent of all counsel without any reason whatsoever and, therefore, the standard for good cause should be flexible. Plaintiffs' counsel further argued that good cause was shown in this matter by the refusal of TRRS' counsel to provide addresses for service and, more importantly, by his refusal to voluntarily schedule depositions of the individual defendants, as well as a representative of the school district.
TRRS' counsel argued that this was a matter for the court's discretion, and that given the lack of diligence in pursuing discovery on plaintiffs' part, the court should not extend discovery.
The court found there was no good cause shown and no diligent effort made by plaintiffs' counsel in pursuing discovery and, therefore, denied the extension. On October 4, 2005, TRRS' counsel filed a motion to dismiss plaintiffs' complaint as to "improper parties, fictional defendants." TRRS' counsel pointed out that service had not been made with respect to these defendants and that there had been no amendment to the complaint to correctly designate them.
In response to TRRS' motion, plaintiffs' counsel moved to amend the complaint and to have the claims against the individuals relate back under R. 4:9-3. After oral argument, the court concluded that plaintiffs' motion to compel TRRS to provide the names and addresses of the four individuals would violate the court's earlier order denying an extension of discovery and that plaintiffs failed to demonstrate the individual defendants knew of the complaint, either actually or constructively, before the expiration of the statute of limitations in June 2004, and noted the lack of effort made by plaintiffs' counsel in discovery to ascertain the individual defendants' names. Accordingly, the court entered an order granting the motion to dismiss as to the individual defendants.
On January 20, 2006, the trial court heard TRRS' motion for summary judgment and granted same by way of an order dated February 8, 2006. The court primarily *902 relied on findings that the accommodations plaintiffs contended were denied them were clearly linked with the Individuals with Disabilities Education Act ("IDEA"), which, requires exhaustion of administrative remedies as a condition of the suit. The court noted that the substance of plaintiffs' complaint, while labeled LAD and ADA claims, are IDEA allegations, and plaintiffs failed to exhaust their administrative remedies. The court further found that defendant justifiably relied upon plaintiffs' failure to challenge the individual education plans entered into pursuant to law.
On appeal, plaintiffs present the following arguments for our consideration:
POINT I
THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' FILED REQUEST TO EXTEND THE DISCOVERY PERIOD NOR NINETY DAYS FOR THE TAKING OF DEFENDANTS' DEPOSITIONS.
POINT II
THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION TO AMEND COMPLAINT.
POINT III
THE TRIAL COURT ERRED IN HOLDING THAT ATTEMPTS BY PLAINTIFFS TO EXHAUST ADMINISTRATIVE REMEDIES WOULD NOT BE FUTILE.
POINT IV
THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFFS' CLAIMS SOUNDED UNDER I.D.E.A. RATHER THAN THE NEW JERSEY LAW AGAINST DISCRIMINATION AND THE A.D.A.
POINT V
THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFFS ARE EQUITABLY ESTOPPED FROM ASSERTING THEIR CLAIMS.
POINT VI
THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFFS' COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS.
POINT VII
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN CONTESTED MATERIAL FACTS EXISTED.
While plaintiffs have raised the points set forth above, the central issue turns on whether the denial of the request to extend discovery was appropriate under the circumstances.
R. 4:24-1(c) provides, in pertinent part:
Extensions of Time. The parties may . . . consent [to] extend the time for discovery for an additional 60 days. If the parties do not agree or a longer extension is sought, a motion for relief shall be filed . . . and made returnable prior to the conclusion of the applicable discovery period . . . The court may, for good cause shown, enter an order extending discovery for a stated period, and specifying the date by which discovery shall be completed. The extension order shall also describe the discovery to be engaged in and such other terms and conditions as may be appropriate. . . .
Under this Rule then, if there is no consent for an additional sixty days, or if a longer time is sought, a motion must be filed, returnable before the discovery end-date, and good cause must be shown to extend discovery. In addition, the order, if granted, must specify the date by which discovery shall be completed and the discovery to be engaged in as well as any other terms and conditions as may be appropriate. Plaintiffs' application was initially returnable before the discovery end-date. *903 It sought a ninety-day extension in order to take the depositions of the individually named defendants and representatives of TRRS.
The issue is whether good cause was shown. "Our standard of review is limited to a determination of whether the trial court mistakenly exercised its discretion in denying plaintiff's motion for an extension of discovery period under R. 4:24-1(c)." Huszar v. Greate Bay Hotel & Casino, 375 N.J.Super. 463, 471-72, 868 A.2d 364 (App. Div.), certif. granted and remanded, 185 N.J. 290, 884 A.2d 1262 (2005) (citing Tucci v. Tropicana Casino and Resort, Inc., 364 N.J.Super. 48, 51, 834 A.2d 448 (App. Div.2003)).
The term "good cause shown" is flexible and its meaning is not fixed and definite. Tholander v. Tholander, 34 N.J.Super. 150, 152, 111 A.2d 643 (Ch.Div. 1955). In deciding whether good cause has been shown for an extension of discovery in the absence of a fixed arbitration or trial date, there are a number of factors which a trial court should consider. They include, but are not limited to, the following:
(1) the movant's reasons for the requested extension of discovery;
(2) the movant's diligence in earlier pursuing discovery;
(3) the type and nature of the case, including any unique factual issues which may give rise to discovery problems;
(4) any prejudice which would inure to the individual movant if an extension is denied;
(5) whether granting the application would be consistent with the goals and aims of "Best Practices";
(6) the age of the case and whether an arbitration date or trial date has been established;
(7) the type and extent of discovery that remains to be completed;
(8) any prejudice which may inure to the non-moving party if an extension is granted; and
(9) what motions have been heard and decided by the court to date.
After reviewing each of these factors, a determination can be made as to whether the trial court's discretion was properly exercised with respect to an individual application to extend discovery. Accordingly, a seriatim review follows.
Plaintiffs in this case stated they needed to extend discovery so that they could identify and take the depositions of the individuals named in the complaint as well as representatives of TRRS in order to advance their claims. They claim that their efforts to do so were frustrated by the response of TRRS' counsel in early June not to voluntarily assist in identifying the individual defendants and producing all of the parties for depositions. Plaintiffs' argument was that these individuals were educators and it would be appropriate to have them deposed during the summer months when school was not in session.
An examination of discovery efforts engaged in by plaintiffs' counsel up to the time of the motion to extend is disheartening. Plaintiffs' counsel did not propound any interrogatories, document requests, or send out any notices to depose. Plaintiffs' counsel received some 450 pages of documents voluntarily from TRRS, but that was the extent of his discovery efforts. Though he sought to voluntarily obtain the correct names of the individual defendants and schedule others' depositions, upon being advised that this would not voluntarily happen, he did not notice anyone for a deposition, or undertake any efforts to depose a representative of TRRS to further identify the individual defendants. Plaintiffs' *904 counsel's efforts were anemic, vacuous and delusory.
On the other hand, TRRS' counsel propounded uniform interrogatories and one page of supplementary interrogatories. He took plaintiffs' depositions in February 2005. TRRS, according to the record before us, never received the answers to the supplementary interrogatories propounded and it did not move to dismiss plaintiffs' complaint for failure to answer same pursuant to R. 4:23-5. Neither counsel asked the court for a case management conference pursuant to R. 4:5B-2 to address discovery issues. Plaintiffs' counsel neither retained nor identified any expert witnesses.
The legal claims in this case allege discrimination in violation of the LAD and the ADA by TRRS and various TRRS personnel against Sandra Kipp, a quadriplegic, while she was a student in middle and high school. Such a claim would normally require extensive fact and expert discovery. Particularly in this case, a critical fact is whether plaintiffs' claims violate the LAD, the IDEA, or the ADA, and there are also significant issues involving the Rehabilitation Act, as well as issues concerning discussions that occurred between plaintiffs and school officials concerning plaintiffs' problems. In sum, this matter, on its face, is legally and factually complex.
The prejudice to the individual plaintiffs, if the application were denied, is evident before us. Plaintiffs, once denied an extension, did not have the depositions of the individual defendants and representatives of the school and, therefore, were not properly prepared to advance their issues in the face of a subsequent summary judgment motion.
Courts, though, are not unfamiliar with situations where enforcing a rule, in an exercise of their discretion and in the face of the litigant's counsel's failing, may severely prejudice a litigant. The Court in Kosmowski v. Atlantic City Med. Ctr., discussed the factors the trial court should consider when exercising discretion in determining to adjourn a case due to the unavailability of a plaintiffs' expert. 175 N.J. 568, 574, 818 A.2d 319 (2003). The Court's observation in that case is equally applicable to the situation here. The Court said:
Clearly, the court must focus on the tension between, on the one hand, `the salutary principle that the sins of the advocate should not be visited on the blameless litigant' Aujero v. Cirelli, 110 N.J. 566, 573, 542 A.2d 465 (1988), and, on the other `the court's strong interest that management of litigation, if it is to be effective, must lie ultimately with the trial court and not counsel trying the case.' Rabboh v. Lamattina, 312 N.J.Super. 487, 492, 712 A.2d 240 (App. Div.1998).
[Ibid.]
R. 4:24-1(c) is part of the amendments to the court rules referred to as "Best Practices." As Judge Pressler noted:
The project known as "Best Practices," which has resulted in a number of significant rule amendments effective September 2000, was undertaken by the Conference of Civil Presiding Judges for the purpose of attempting to improve the efficiency and expedition of the litigation process as well as to restore state-wide uniformity to the wide range of discretionary and increasingly disparate judicial responses to such matters, among others, as the resolution of discovery problems and disputes, the fixing of trial calendars and adjournments of trial dates. The predicate of the project was that by amending the rules to provide for single-judge pre-trial case management and by establishing realistic discovery periods according to the nature *905 of each case, a discovery-completion target date could be enforceable, and if enforceable, credible trial dates could be set, ending the general expectation that a case would be reached for trial only after multiple adjournments. (Emphasis added).
[Pressler, Current N.J. Court Rules, Comment 5 on R. 1:1-2 (2001).]
Judge Pressler went on to note that:
[s]ignificantly, upon filing of the complaint, each action is assigned to a particular judge for all pretrial purposes who is responsible for the management of the case until filing of the new trial information statement (TIS), due following the completion of the discovery period and signaling the readiness of the case for trial.
[Ibid.]
Best Practices was enacted to "counteract an unfortunate and increasingly dilatory, casual and desultory approach by some members of the bar to their litigation responsibilities." Tucci, supra, 364 N.J.Super. at 53, 834 A.2d 448. The Best Practices guidelines, however, are not inflexible, unbending dictates, but vest significant discretion with the trial courts to determine on a case-by-case basis if a discovery period should be extended and, if so, what deadlines and conditions should be set. See Ponden v. Ponden, 374 N.J.Super. 1, 9, 863 A.2d 366 (App.Div. 2004), certif. denied, 183 N.J. 212, 871 A.2d 90 (2005). The critical aim of Best Practices is the establishment of a realistic arbitration and trial date. "The ultimate procedural goal of the proposed civil case management system is to provide attorneys, litigants and witnesses with a firm and credible trial date." Report of the Conference of Civil Presiding Judges on Standardization and Best Practices, 156 N.J.L.J. 80, 82 (April 5, 1999). On page twelve of the Conference's Report, the Conference noted that "the distinction between the individual versus the master calendar is perhaps less important than developing a system that provides both pretrial management when needed, by a judge familiar with the case, and trial date certainty." Ibid. In Ponden, supra, we recognized, "the absence of an arbitration or trial date at the time of the trial judge's ruling is of critical significance in a court's exercise of its discretion to extend discovery." 374 N.J.Super. at 9, 863 A.2d 366. We concluded there "that in the absence of a scheduled arbitration or trial date, a trial judge's approach to an application to extend discovery, for the purpose of submitting a late expert report, should not be materially different from the pre-`Best Practices' approach." Ibid. Ponden noted Best Practices' "raison d'etre was to render trial dates meaningful and, thus, the enforcement or relaxation of discovery end dates are chiefly governed by the presence of an existing trial or arbitration date and whether the late discovery can be completed without jeopardizing the arbitration or trial date." Id. at 10, 863 A.2d 366.
"Best Practices" was adopted to establish uniformity in the trial courts throughout the State, to establish firm and meaningful trial dates, to restore the public's faith in expeditious and efficient litigation and to control dilatory litigation tactics by providing the trial courts with tools to manage litigation. It is important to note, therefore, that Best Practices was not adopted primarily as a means of reducing case backlog or increasing case clearance rates. While those goals are laudable, it is a misperception to think that Best Practices was principally adopted to give judges a seductive tool to be used chiefly to reduce backlog and increase clearance rates. A careful review of the Report, the case law, and Judge Pressler's comments, *906 make clear that that is not the case. Best Practices, rather, is a vehicle that empowers individual trial judges to step in, where appropriate, and manage discovery in a case so that a realistic arbitration and trial date can be set. That is the reason R. 4:24-1(c) provides that not only may the court for "good cause shown" extend discovery, but if extended, it is to set the date by which the additional discovery is completed and is to describe the discovery to be engaged in and such other terms and conditions as may be appropriate. These provisions of R. 4:24-1(c), rather than restricting a trial judge's options to either deny an application to extend discovery or to extend same to a date certain, allow a trial judge to review each matter's unique factual situation, and in appropriate circumstances, enter a detailed case management order with appropriate terms and conditions so as to provide the individual litigants with a chance to have discovery completed and the matter heard on the merits.
In this case, at the time the application for extension of discovery was made, the case was over 450 days old, however, no arbitration or trial date had been set.
There is nothing in the record to demonstrate any prejudice to the non-moving party in extending discovery. A litigant cannot be heard to complain if there is an extension when they have not timely utilized the rules to advance and protect their own interests. Defense counsel could have moved to dismiss under R. 4:23-5 in November 2004 upon receipt of incomplete interrogatory answers. Likewise, counsel could have moved to dismiss as to the individual defendants after the February 2005 deposition. Throughout the discovery period, counsel could also have moved under R. 4:5B-2 for a case management conference. Instead, counsel refused to voluntarily engage in scheduling depositions over two months prior to the expiration of the discovery.
We note counsel's assertion that he would not try to "guess at the identity of those individuals" plaintiffs sought to name and depose. Following the February 2005 deposition, we question, though, what "guessing" would be involved. Were there many superintendents named Mr. Ritacco, or principals named Mr. Azzolini, or biology teachers named Mr. Kohut or cheer-leading coaches named Mrs. Fernandez? While we fully understand the frustration of TRRS' counsel, we cannot find any prejudice inuring to his client's that would result from an extension of discovery.
The record before us does not reveal any motion practice prior to the motion to extend discovery. The record certainly does reveal the need on plaintiffs' part to have deposed the individual defendants, other fact witnesses, and to have obtained experts.
A review of all the factors outlined above leads us to conclude that in the absence of a fixed trial or arbitration date, and recognizing that parties without any reason can consensually extend discovery by sixty days, that the measure as to what constitutes good cause under R. 4:24-1(c) is not high. What is required is a cogent reason which is consistent with the aims and goals of Best Practices and a weighing of the factors outlined above. A trial court, upon such a presentation from a party seeking a discovery extension, may then assert its strong interest in the management of litigation, address any dilatory actions of counsel and, where appropriate, provide individual litigants their opportunity to have their matter decided on the merits in an efficient and expeditious fashion by extending discovery. Appropriate terms and conditions may be included in any such order.
*907 While we commend the trial judge's patience and careful reasoning in this case and condemn plaintiffs' attorney's lackadaisical attitude toward discovery, we cannot help but conclude that given the purpose and goals of Best Practices, the lack of prejudice to TRRS, the extreme prejudice to the individual plaintiffs, the lack of a trial date and the need for the public to have confidence that disputes will be resolved on the merits whenever possible, the trial judge mistakenly exercised his discretion by refusing to extend the discovery date.
Concerning the court's order dismissing the individual defendants, R. 4:9-3 permits an amendment to a complaint to relate back in time provided the plaintiff shows that:
(1) the claim asserted in the amended complaint arose out of the conduct, transaction or occurrence alleged or sought to be alleged in the original complaint; (2) the new defendant had sufficient notice of the institution of the action not to be prejudiced in maintaining his or her defense; and (3) the new defendant knew or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her.
[Viviano v. CBS, Inc. 101 N.J. 538, 553, 503 A.2d 296 (1986).]
While the requirements of R. 4:9-3(1) are present, the questions to be resolved under R. 4:9-3(2) and (3) could not have been addressed without full discovery. In light of our ruling as to discovery, the order dismissing the four individuals and the fictitious defendants must be reversed. Likewise, the order granting summary judgment was premature in the absence of completed discovery.
Accordingly, we reverse the orders entered by the trial judge and remand for the entry of an order extending the discovery end-date for a period sufficient to allow plaintiffs to reasonably conclude discovery. The order should set forth exactly what is to be done, by what date, and with whatever terms and conditions the trial court may view appropriate to insure expeditious and thorough compliance with the discovery order. No costs to plaintiffs.
NOTES
[1] The spelling of the three names (Kohut, Azzolini and Ritacco) was different in the answers to interrogatories from that in the complaint.
[2] While the motion was made returnable on August 19, 2005, and received by the clerk's office on August 3 (within the sixteen days required under R. 1:6-3(a)), the clerk's office did not stamp it filed until August 4 and the motion was therefore made returnable on the next motion date after August 19, 2005.