**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1753-19

HAZEL PATRICK, Administrator
Ad Prosequendum of the
ESTATE OF ALFONZER
PATRICK, deceased,

     Plaintiff-Appellant,

v.

ELMWOOD EVESHAM
ASSOCIATES, LLC, d/b/a
CARE ONE AT EVESHAM,
CARE ONE, LLC,
HEALTHBRIDGE
MANAGEMENT, LLC,
KESSLER INSTITUTE FOR
REHABILITATION, d/b/a
MARLTON REHABILITATION
HOSPITAL, VIRTUA MEMORIAL
HOSPITAL MT. HOLLY, VIRTUA
MEMORIAL HOSPITAL, VIRTUA
MARLTON HOSPITAL, and
VIRTUA HEALTH, INC.,

     Defendants-Respondents.

_____

Argued September 15, 2021 – Decided January 6, 2022

Before Judges Hoffman, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2764-17.

Anton Tupa argued the cause for appellant (Swartz Culleton, PC, attorneys; Christopher J. Culleton, on the briefs).

Anthony Cocca argued the cause for respondents Elmwood Evesham Associates, LLC, d/b/a Care One at Evesham, Care One, LLC, and Healthbridge Management, LLC (Cocca & Cutinello, LLP, attorneys; Anthony Cocca and Katelyn E. Cutinello, of counsel and on the brief).

Brian D. Pagano argued the cause for respondents Kessler Institute for Rehabilitation and 92 Brick Road Operating Company, LLC, d/b/a Marlton Rehabilitation Hospital (Burns White, LLC, attorneys; Brian D. Pagano, of counsel and on the brief; Meghan E. Sibiski, on the brief).

Kathryn A. Rivera argued the cause for respondents Virtua Health, Inc., Virtua Memorial Hospital Burlington County, Inc., and Vitrtua-West Jersey Health System, Inc. (Parker McCay, PA, attorneys; Kathryn A. Rivera, of counsel and on the brief).

PER CURIAM

In this medical negligence case, plaintiff appeals from trial court orders that collectively resulted in the dismissal of plaintiff's claims against defendants. Following our review of the record and applicable law, we vacate the trial court orders that denied plaintiff's motion to extend discovery to allow for a physician

A-1753-19

expert to opine on causation and granted defendants' motions for summary judgment.

I.

On January 8, 2016, seventy-nine-year-old Alfonzer Patrick (decedent) underwent elective spine surgery at defendant Virtua Memorial Hospital of Burlington County (Virtua). Decedent had a lengthy medical history and numerous preexisting conditions, including atrial fibrillation, hyperlipidemia, chronic obstructive pulmonary disease, obstructive sleep apnea, coronary artery disease, gastroesophageal reflux disease, congestive heart failure, peripheral vascular disease, hyperglycemia, morbid obesity, and pulmonary hypertension. Decedent required surgery to address severe cervical stenosis and myelopathy that developed over the previous eight months, limiting his ability to walk and use his arms.

Following his surgery, decedent was admitted to Virtua's intensive care unit (ICU). On January 9, ICU nurses established decedent's plan of care, which identified the risk of a pressure ulcer as a problem. To address that issue, a pressure ulcer risk assessment was ordered every twelve hours, yielding scores of high risk to mild risk. ICU records show decedent was turned and positioned every two hours while in the ICU, but the records after decedent left the ICU

3

did not document turning and repositioning every two hours. ICU nurses noted four pink areas described as scarring from old pressure ulcers; however, decedent's son and wife (plaintiff) testified at deposition that decedent never had any wounds to his buttocks or sacrum at any time prior to this hospitalization.

On January 14, 2016, decedent was moved from the ICU to a regular hospital bed; the next day, Virtua discharged him to defendant Marlton Rehabilitation Hospital (Marlton Rehab). Virtua's discharge instructions and transfer form did not list any skin problems for decedent; in contrast, the admission records for Marlton Rehab indicated decedent had an open wound on his right buttock. On January 19, a nurse noted that decedent had a stage II pressure sore. This pressure sore was again documented on January 27, but with an increase in size.

While at Marlton Rehab, decedent experienced worsening respiratory problems; as a result, on February 6, 2016, he was transported to the emergency room at Virtua and then admitted to the ICU for "chronic respiratory failure, sepsis, atrial fibrillation, and acute renal failure syndrome, as well as MRSA pneumonia." The following day, an examination revealed "a stage II to stage III sacral buttock decubitus," with a nurse describing decedent "as having a boil

4

which is healed on his leg and a stage III-IV pressure ulcer." Another nurse documented two stage III pressure injuries.

Decedent continued to experience respiratory issues and because of his continued medical needs, on February 19, 2016, he was transferred to defendant Care One of Evesham (Care One), a skilled nursing facility, for further rehabilitation. Upon admission, decedent's sacral ulcers were documented at stage II. In March, these wounds grew and merged.

On March 12, 2016, decedent was discharged to his home, where Virtua Home Care continued to provide care. Throughout the month, decedent's pressure injury grew and worsened. On March 31, decedent reported respiratory difficulty, increased weakness, and "intolerable pain in his buttocks and hips." Decedent returned to Virtua. On April 4, 2016, decedent "underwent excisional debridement of the sacral decubitus and pulse irrigation of the wound . . . ." Thereafter, the pressure injury was larger and deemed stage IV.

Decedent's respiratory issues continued, and on April 17, 2016, decedent went into cardiac arrest, requiring resuscitation and intubation. Thereafter, decedent's family opted for comfort care and changed his status to do-not-resuscitate. He died on April 19 and his death certificate listed "acute [and] chronic respiratory failure" as the cause of death.

A-1753-19

In 2017, plaintiff filed a complaint against defendants alleging decedent suffered injuries "caused by the negligence and carelessness of the [d]efendants' respective nursing and administrative staffs, and these injuries caused and/or contributed to his death." The complaint included identical counts against each defendant, asserting survival and wrongful death claims "[a]s a direct and proximate cause of" defendants' deficient care; in addition, plaintiff asserted a claim against Care One alleging a violation of the Nursing Home Residents' Bill of Rights Act, N.J.S.A. 30:13-5 to -11.

Discovery ensued; ultimately, the discovery period lasted 879 days, including five extensions. On August 16, 2019, the trial court entered an Order Extending Discovery, which established the following schedule for the completion of discovery:

1. Plaintiff's expert reports shall be served no later than September 16, 2019.

2. Defendants' expert reports shall be served no later than November 18, 2019.

3. All expert depositions shall be completed by January 3, 2020.

4. Discovery will end on January 17, 2020.

5. Trial is adjourned to March 2, 2020, to allow time for the filing of all dispositive motions.

A-1753-19

On July 30, 2019, plaintiff served an expert report from Audrey M. Lalli, R.N. A registered nurse for over thirty years, Nurse Lalli's resume lists her extensive experience in geriatric care, including pressure injury prevention and treatment, as well as administrative experience including case management, care plan development, and nurse education and supervision.

In her report, Nurse Lalli opined that decedent "did not receive an acceptable level of nursing care and treatment from the nursing staff at Virtua Hospital, Marlton Rehab and Care One." She stated that decedent "had multiple risk factors for skin breakdown," but "[e]ven with these risks, if attention had been paid particularly to proper assessment and pressure relief, turning and a specialty mattress and sitting surface, monitoring more closely of nutrition, and controlling moisture, this pressure ulcer was preventable and could have been reversed in the early stages." Nurse Lalli also cited the nursing staffs' lack of communication, incorrect assessment of the pressure injury, and failure to implement programming to address incontinency as deficient care.

Nurse Lalli concluded the treating nurses' failure to provide care worsened decedent's wound, which "caused him intolerable pain and limited his ability to 'tolerate good positioning' and have 'active participation in therapeutic interventions.'" She explained that defendants' substandard nursing care led to

7

the surgery performed on the wound, and such "activity ultimately affects a patient's respiratory status and contributes to a decline in that function and contributed[1] to his eventual death."

On October 23 and 31, 2019, defendants filed motions to bar Nurse Lalli from rendering opinions on medical causation. On November 8, 2019, the trial court heard oral argument on the defendants' motions to bar plaintiff's expert, Nurse Lalli, from offering opinions on causation. At the start of the hearing, the motion judge clarified that "[t]he defense is not arguing that the plaintiff's nursing expert can't express opinions on deviation. They're arguing that the nurse can't express opinions on proximate cause to damages." Thus, the judge framed the issue before the court as follows: "[I]s a nurse qualified to give any type of proximate cause opinion[?] And to make it worse in this case, it's not an obvious one."

Plaintiff argued that N.J.R.E. 702 allows Nurse Lalli's to use her specialized knowledge as a registered nurse with extensive nursing education

---

[1] While Nurse Lalli's report clearly addressed issues of causation, defendants did not advise plaintiff's attorney of any objection to her expression of causation opinions until they filed their motions to bar Nurse Lalli's testimony, in late October 2019, five weeks after the deadline for plaintiff's expert reports. Plaintiff served Nurse Lalli's expert report at the end of July 2019, six weeks before the deadline for plaintiff's expert reports.

A-1753-19

and experience, including experience in geriatric care, to assist the jury to understand that defendants' substandard nursing care caused decedent's problems which led to his death.

The defense countered that New Jersey's statutes and regulations governing nursing practice prohibit nurses from opining on causation, diagnoses, and underlying causes of conditions. Thus, they argued that Nurse Lalli could not offer an opinion on the effect of nursing care on decedent's pressure injury and health since it would pertain to underlying cause and diagnosis, especially in light of decedent's numerous comorbidities.

The motion judge agreed with defendants, finding it inappropriate for a nurse to provide proximate cause testimony in this case, considering decedent's complicated medical history involving multiple serious comorbidities. The judge acknowledged "[t]here may be cases where a nurse is qualified to express an opinion that hits on proximate cause[,]" but "[t]his case [wa]s a very bad case to try to shoehorn that in." In short, the judge ruled that Nurse Lalli was not qualified "to give the punch line to the jury that these sores contributed to the decedent's death."

Plaintiff argued that Nurse Lalli should at least be permitted to testify that the nurses' breached duty of care caused decedent's pressure injury, but the judge

A-1753-19

rejected that argument, concluding that only a doctor could parse what exactly was caused by the confluence of defendants' alleged substandard care and decedent's poor medical condition.  Thus, the judge barred Nurse Lalli from testifying to "any and all causation opinions."  Still, the judge stated that Nurse Lalli could testify about breach of care and stated, "[s]he may very well be qualified to testify about these sores and what potential impacts they have in terms of patient mobility."

At the conclusion of the hearing, the motion judge memorialized his decision by entering orders granting the motions to bar Nurse Lalli "from proffering any and all causation opinions."  Based upon these orders, within a few days, each defendant filed a motion for summary judgment. On November 20, 2019, plaintiff filed a motion for reconsideration of the orders precluding Nurse Lalli from proffering any causation opinions, along with a motion to extend expert discovery.  On November 25, plaintiff served defendants with a report and curriculum vitae from a proposed physician expert, Dr. Richard Stefanacci, D.O., and a certification of due diligence from plaintiff's counsel.  In the certification, plaintiff's counsel set forth the following explanation for not providing a report from Dr. Stefanacci sooner:

> Plaintiff was unable to obtain the report of Dr. Stefanacci prior to the September 16, 2019 . . .

expert[-]report deadline because, prior to November 8, 2019, plaintiff's counsel was unable to anticipate that the [c]ourt would require plaintiff to produce a physician expert to establish prima facie causation with respect to decedent's pressure wounds. Plaintiff did not anticipate the court's ruling because in the scores of New Jersey pressure wound cases that counsel has handled on behalf of patients and their families, no court had barred the plaintiff nursing care expert from providing opinions on the cause of the injured patient's pressure wounds, or ruled that a physician opinion was required to establish prima facie cause of a pressure wound, and no New Jersey appellate court has ruled that proof concerning pressure wound causation requires a medical opinion to establish a prima facie case.

On December 6, 2019, the motion judge heard oral argument on these motions. The judge first denied plaintiff's motion for the court to reconsider its earlier decision barring Nurse Lalli from rendering causation opinions. The judge noted the motion focused on unpublished opinions, and ruled that it would be inappropriate for him to reverse himself based on non-authoritative cases that he was prohibited from citing by Rule 1:36-3. Citing N.J.S.A. 45:11-23(b) and this court's opinion in One Marlin Rifle, 319 N.J. Super. 359 (App. Div. 1999),[2]

---

[2]  In One Marlin Rifle, we held that a wife, who was a certified clinical nurse specialist and an advanced practice nurse in mental health and psychiatric nursing, was not qualified to render an expert opinion "with respect to a medical diagnosis of her former husband's mental condition[,]" at a gun forfeiture hearing. Id. at 368.

11

the judge reiterated that while nurses may identify and treat pressure injuries, they cannot opine as to their cause, as that involves a medical diagnosis of a disease process, the breakdown of skin.

Next, the judge denied plaintiff's motion to extend discovery to allow plaintiff to include the expert opinion of Dr. Stefanacci. Citing Ponden v. Ponden, 374 N.J. Super. 1 (App. Div. 2004), the judge found there were no exceptional circumstances justifying the extension of discovery because plaintiff's counsel should have known a medical expert was necessary to establish proximate cause in this case. Since plaintiff had already submitted the report of her proposed physician expert with her motion papers, plaintiff argued there would be no need to move the trial date; however, the judge rejected this argument, reasoning the defense would necessarily need time to respond to the new expert's report.

Finally, the judge addressed the summary judgment motions. Since plaintiff now had "no expert testimony on the issue of proximate cause to anything," the judge granted defendants' summary judgment motions.

This appeal followed, with plaintiff presenting the following points of argument:

> I. THE TRIAL COURT ERRED IN GRANTING
> DEFENDANTS' MOTIONS TO BAR

PLAINTIFF'S EXPERT NURSE LALLI FROM OPINING A[S] TO CAUSATION.

II. THE TRIAL COURT ERRED IN REFUSING TO GRANT RECONSIDERATION OF ITS ORDERS GRANTING THE MOTIONS TO BAR PLAINTIFF'S EXPERT NURSE LALLI FROM OPINING AS TO CAUSATION; AS WELL AS ERRED IN DENYING PLAINTIFF'S MOTION TO EXTEND EXPERT DISCOVERY.

III. IN THE ALTERNATIVE, THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.

II.

To prevail in a medical malpractice action, "ordinarily, a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury." Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (internal quotation marks and citation omitted). Such expert testimony "is permitted to 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" Ibid. (quoting N.J.R.E. 702). Further, an expert must be qualified to testify, meaning the expert must have the requisite "knowledge, skill, experience, training, or education . . . ." N.J.R.E. 702.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015)

(citation omitted). "[W]e apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id., 221 N.J. at 53 (second alteration in original) (citation and internal quotation marks omitted). The trial judge's determination will not be disturbed "unless a clear abuse of discretion appears." State v. Chatman, 156 N.J. Super. 35, 40 (App. Div. 1978) (quoting Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411 (1960)); however, we accord no such discretion to a ruling that is "inconsistent with applicable law." Pressler & Verniero, Current N.J. Court Rules, cmt 4.7 on R. 2:10-2 (2022).

Moreover, an expert witness's conclusions can be based on his or her qualifications and personal experience, without citation to academic literature. State v. Townsend, 186 N.J. 473, 495 (2006) (allowing opinion testimony based on the expert's "education, training, and most importantly, her experience"); Rosenberg v. Tavorath, 352 N.J. Super. 385, 403 (App. Div. 2002) ("Evidential support for an expert opinion is not limited to treatises or any type of documentary support, but may include what the witness has learned from personal experience."). "The requirements for expert qualifications are in the disjunctive. The requisite knowledge can be based on either knowledge, training

14                                                                            A-1753-19

or experience." Bellardini v. Krikorian, 222 N.J. Super. 457, 463 (App. Div. 1988).

## III.

On appeal, plaintiff argues the trial judge erred by barring Nurse Lalli's causation opinions, asserting her extensive background, training, and experience qualified her to render opinion testimony on the issue of causation, including decedent's death. Plaintiff contends the judge committed further error when he denied plaintiff's motion to extend discovery to allow for a physician expert to opine on causation and granted defendants' motions for summary judgment. We address these arguments in turn.

## A.

Given the complexity of the medical causation in this case, we cannot conclude the motion judge clearly abused his discretion in concluding Nurse Lalli was not qualified to render the requisite opinion on causation, notwithstanding her extensive experience. We agree with the motion judge that

> [T]here are nurses out there, including perhaps Nurse Lalli, that in a real world sense may very well be able to competently determine a lot of proximate cause issues. But it seems to me, to the extent that the law encourages bright line tests, that everybody can understand and comply with, this is a very bad vehicle to argue that a nurse should be giving any proximate cause testimony.

15

. . . .

> There may be cases where a nurse is qualified to express an opinion that hits on proximate cause. This case is a very bad case to try to shoehorn that in.
>
> This patient had a complicated medical history. He was elderly, he was very sick, and he had a somewhat complicated history after the first cervical [surgery]. It's not like he had the surgery on Monday and died on Tuesday. It was months later[,] after three separate hospitalizations . . . .

We conclude the decision to bar the causation testimony of Nurse Lalli under N.J.R.E. 702 did not constitute a clear mistaken exercise of discretion, in light of "the claim involved, the specific allegations made, and the opinions that the expert propose[d] to offer at trial." Garden Howe Urban Renewal Assocs., L.L.C. v. HACBM Architects Eng'rs Planners, L.L.C., 439 N.J. Super. 446, 456 (App. Div. 2015). We therefore affirm the judge's orders barring Nurse Lalli from providing causation opinions at trial.

## B.

Plaintiff next contends the motion judge committed reversible error when he denied plaintiff's motion to extend plaintiff's expert-witness deadline to allow for a physician expert to render the requisite opinion on causation. This argument has merit.

A-1753-19

Our system of justice favors the fair disposition of cases on their merits. See Viviano v. CBS, Inc., 101 N.J. 538, 547 (1986). On the other hand, the system also strives to make litigation "expeditious and efficient." Leitner v. Toms River Reg'l Sch., 392 N.J. Super. 80, 91 (App. Div. 2007). The Rules of Court are designed to achieve, among other goals, certainty in trial dates. Ibid. As we have recognized, however, exceptional circumstances can arise, where trial dates or other litigation deadlines should be extended in the interests of justice and to avoid punishing litigants unfairly. Id. at 91-94. The fair balance between fairness and trial-date certainty is reflected in Rule 4:24-1(c) governing extensions of discovery, which provides in pertinent part: "No extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown."

To demonstrate exceptional circumstances, we generally require a showing that the attorney diligently pursued the information sought during the discovery period but was frustrated from obtaining the discovery by circumstances largely beyond counsel's control. Bender v. Adelson, 187 N.J. 411, 429 (2006). Specifically, the moving party must show: (1) why discovery was incomplete and the diligence in pursuing discovery; (2) the additional discovery is essential; (3) an explanation for why an extension was not sought

17

within the original discovery period; and (4) the circumstances were beyond the party's and counsel's control. Garden Howe Urban Renewal Assocs., LLC, 439 N.J. Super. at 460.

As noted, because a trial date had already been set, plaintiffs were required to demonstrate "exceptional circumstances." At oral argument, it initially appeared that the judge was inclined to grant plaintiff's motion, based on these comments:

> I don't really mind reopening the case and postponing the trial. The earth is not [going to] spin off its axis. It's not like your decision to go with Nurse Lalli was malpractice and incompetent. You're representing to me that this is the first time you've ever had a judge disqualify the nurse on the issue of proximate cause. If that's true, then I certainly can't blame you . . .

After stating that he was inclined to grant plaintiff's motion and reopen discovery, the judge added, "I don't think the defense is prejudiced in the types of prejudice that normally bars reopening of discovery. I'll give them . . . ample time to get a response expert if they want. If [defendants] want to depose Dr. [Stefanacci], [plaintiff will] have to pay for it . . . ."

Notwithstanding these comments, the judge ultimately denied the motion to extend the deadline for plaintiff's experts to include Dr. Stefanacci, finding

18

plaintiff had not demonstrated exceptional circumstances justifying a further extension of discovery, including the deadline for serving expert reports.

In our view, the motion judge mistakenly exercised his discretion by refusing to extend the time-deadline for plaintiff's expert reports to include the report of Dr. Stefanacci. Plaintiff was diligent in pursuing discovery, and served an expert witness report addressing negligence and causation from Nurse Lalli, six weeks before the deadline for the report. Rather than inform plaintiff of their objections to the causation opinions included in the report, defendants waited until five weeks after plaintiff's expert-report deadline to file their motions to bar Nurse Lalli's testimony.

In Mellwig v. Kebalo, 264 N.J. Super. 168, 171 (App. Div. 1993), we held that "[i]t is inappropriate to treat objections to de bene esse deposition testimony as concealed weapons to brandish at a future trial." In the context of this case, we similarly find it inappropriate to treat unannounced objections to the competency of an expert witness as concealed weapons to brandish at future motions to preclude the witness from offering critical testimony, particularly when the filing of the motions appear to be tactically delayed. When motions to preclude expert testimony are pocketed until after the discovery deadline has passed, the trial court has less options available to "fashion a fair remedy

suggested by all of the circumstances, including the amount of time remaining before trial." Id. at 172.

Moreover, plaintiff's counsel provided a reasonable explanation for not having provided a report from Dr. Stefanacci sooner, based on his own experience "in the scores of New Jersey pressure wound cases" that he had handled. In none of those cases did a court bar his nursing care expert from providing opinions on causation of pressure wounds, or rule that a physician opinion was required to establish causation; in addition, no New Jersey appellate court had ruled that proof concerning pressure wound causation required a medical opinion to establish a prima facie case. Nothing in the record disputes the experience recounted by plaintiff's counsel with these types of cases. We therefore conclude that, under the circumstances, the discovery extension should have been granted.

Assuming the judge correctly decided that all of Nurse Lalli's causation opinions should be barred, as we have ruled, the judge mistakenly exercised his discretion when he denied plaintiff leave to proceed with Dr. Stefanacci as a causation expert. Considering the unsettled law in this area and the prior experience of plaintiff's counsel, along with the fact that defendants did not move to bar the causation opinions of Nurse Lalli until five weeks after the

20

discovery the deadline for plaintiff's expert reports, we are satisfied that plaintiff presented exceptional circumstances that warranted granting the requested extension of time. We further note that the motion judge could have granted plaintiff's motion to extend expert discovery without moving the trial date since defendants had the report of Dr. Stefanacci in hand and the scheduled trial date was almost three months way.

On remand, the trial court shall conduct a case management conference within thirty days and then enter an order allowing plaintiff to serve the expert report of Dr Stefanacci as within time, and a final management order establishing new deadlines for the completion of discovery and setting a new trial date.

Affirmed in part, vacated in part, and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1753-19