**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2670-22

MORRIS BELLIFEMINE, M.D.,
PA,

     Plaintiff-Appellant,

v.

MEADOWLANDS HOSPITAL
MEDICAL CENTER, MHA, LLC,
f/d/b/a MEADOWLANDS
HOSPITAL MEDICAL CENTER,
LYNN MCVEY, and TAMARA
DUNAEV,

     Defendants-Respondents.

_____

Argued December 17, 2024 – Decided January 13, 2025

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4332-20.

Constantine Bardis argued the cause for appellant (Law Office Constantine Bardis, LLC, attorneys; Constantine Bardis and Ronald M. Gutwirth, on the briefs).

Benjamin V. Parisi argued the cause for respondents (Parisi & Santaite, LLC, and Porzio, Bromberg & Newman, PC, attorneys; Benjamin V. Parisi, of counsel and on the brief; Thomas J. Reilly, on the brief).

PER CURIAM

In this breach of contract case, plaintiff Dr. Morris Bellifemine appeals from four trial court orders: an August 5, 2022 order barring the amendment of his complaint and introduction of evidence produced after the close of discovery; another August 5, 2022 order quashing a subpoena served by plaintiff on a nonparty; a February 28, 2023 order granting defendants' motion for summary judgment; and an April 14, 2023 order denying reconsideration of the same. For the reasons that follow, we affirm in part, and reverse in part.

## I.

Plaintiff, a licensed physician, was employed at defendant MHA, LLC f/d/b/a Meadowlands Hospital Medical Center, from sometime in 2010 until its sale at the end of 2017. Defendant Lynn McVey was MHA's CEO from 2010 to 2015. Defendant Tamara Dunaev was one of MHA's owners.[1]

The parties entered into several employment agreements over the years: a December 2010 contract for plaintiff to serve as Director of the Pulmonary

---

[1] Collectively MHA, McVey, and Dunaev are referred to as "Defendants".

Unit;[2] a June 2011 contract for plaintiff to serve as Director of the Sleep Center for $19,500 annually; a December 2012 contract for plaintiff to serve as both President of the Medical Staff for $25,000 annually and Co-Director of the Intensive Care Unit ("ICU") for $33,600 annually; and a September 2014 contract for plaintiff to serve as Chief Medical Officer for $75,000 annually. The contracts specifically required bi-weekly payments absent any agreement to the contrary.

Plaintiff alleged that beginning in December 2013, MHA did not properly compensate him per the terms of the contracts. Plaintiff produced eleven checks dated between April 2016 to September 2017 totaling $85,189.68, which he testified were the only payments he received from MHA during the contested period. Those checks were not itemized by role or contract.

Plaintiff claimed he spoke monthly with an employee from MHA's accounting department, later identified as Diana Zheludkova, who kept a running total of the money owed to plaintiff in a ledger. According to plaintiff, these conversations with Zheludkova led him to arrive at $255,000 in damages alleged in his complaint. Plaintiff also maintains non-party Dr. Richard Lipsky,

---

[2] The record does not reflect the promised compensation for this role.

3

another of the hospital's owners, promised him in December 2017 that he would be paid once the hospital was sold.

Plaintiff filed suit in November 2020. Defendants answered, raising, among other affirmative defenses, plaintiff's own breach of the contract's terms, statute of limitations, lack of damages, and accord and satisfaction.

Defendants requested a statement of damages pursuant to Rule 4:5-2, a request they repeated upon receiving plaintiff's discovery requests. They also sought discovery from plaintiff, including his personal and business tax records. Ultimately, plaintiff was ordered to respond to defendants' discovery requests by November 2, 2021, or risk dismissal of his complaint under Rule 4:23.

When plaintiff failed to supply the requested discovery, the trial court granted defendants' motion to dismiss plaintiff's complaint with prejudice. Plaintiff successfully moved for reconsideration, and the motion judge reinstated the complaint and set a new discovery end date ("DED") in May 2022. See R. 4:24-1(c).

On the DED, plaintiff deposed McVey in the morning, and defendants deposed plaintiff in the afternoon. At the outset of McVey's deposition, plaintiff's counsel asked defense counsel, "is this the only witness you are

producing today?" Defense counsel replied, "[t]his is it for today. We have to get dates for Tamara [Dunaev] and Dr. [Richard] Lipsky."

About a month after the DED, plaintiff subpoenaed Zheludkova for deposition. Defendants then moved to quash the subpoena. Before the court heard defendants' motion to quash, Zheludkova failed to appear for the deposition. The parties placed a statement on the record, in which defense counsel noted they would be producing "the other two parties," ostensibly referring to Dunaev and Dr. Lipsky.

Plaintiff then moved to: amend his complaint and reinstate Hudson Regional Hospital as a defendant; extend discovery; and compel depositions of both Zheludkova and Dunaev. In his certification, plaintiff's counsel asserted discovery remained incomplete. He stated that while he noticed Dunaev's deposition prior to the DED, defense counsel was unable to produce her but promised to do so after the DED. Before the court heard or decided plaintiff's motion to amend the complaint, extend discovery, and compel the depositions, defendants produced Dunaev for deposition. A week later, defendants filed a cross-motion to bar any evidence adduced after the DED.[3]

---

[3] Defendant conceded the deposition of Dunaev is not barred because the parties agreed to complete her deposition.

A-2670-22

The trial court granted defendants' motion to quash the subpoena of Zheludkova, determining it did not have the discretion to force someone to be deposed after the DED unless the party seeking the discovery had successfully moved before a different judge, the Presiding Civil Judge, to reopen discovery and a conforming order had been entered to that effect. That same day, the Presiding Civil Judge denied plaintiff's motion to amend the complaint and granted defendants' motion to bar any evidence obtained after the DED. The court wrote in the order:

> Granted. The motion to amend was denied on procedural grounds. The motion to bar is granted because discovery was obtained outside the discovery end date. The Plaintiff did not seek to extend discovery beyond the May 26, 2022 discovery end date but rather went ahead and conducted discovery without seeking that permission. As such, the discovery conducted beyond the discovery end date is barred. Trial remains.

Therefore, the February 15, 2023 trial date remained. The motion to reopen discovery was denied on procedural grounds, specifically plaintiff's failure to comply with the Chief Justice's March 27, 2020 omnibus order requiring all submissions in excess of thirty-five pages be provided to the court in hard copy.

Months later, after plaintiff failed to attempt to cure the procedural errors in his motion to extend discovery, defendants moved for summary judgment.

6

Defendants made several arguments in support of summary judgment: plaintiff failed to adduce evidence of his alleged damages of $255,000; plaintiff breached material terms of the contract by failing to timely complete patient charts; plaintiff's claims were barred by the applicable statute of limitations; a $10,000 check issued to plaintiff in January 2018 represented an accord and satisfaction of any purportedly past-due amounts; and in the alternative, if the entire complaint could not be dismissed, plaintiff's unjust enrichment, breach of the implied covenant of good faith and fair dealing, and conversion claims should be dismissed as a matter of law.

Plaintiff responded, contending the damages claim was supported by: the conversations between plaintiff and Zheludkova, which would be admissible as party-opponent statements; defendants' responses to interrogatories, which plaintiff claimed included admissions by Dunaev and Dr. Lipsky that plaintiff was owed the money alleged; and the contracts themselves.

At oral argument the motion court inquired as to whether discovery had revealed any defendants' statements acknowledging the debt and promising to pay plaintiff once the hospital was sold. Defense counsel did not recall such a statement. Plaintiff's counsel stated that it was in the doctor's certification attached to the opposing papers, however the motion court replied that the

7

doctor's certification was a "sham affidavit." Plaintiff's counsel argued that the sham affidavit doctrine did not apply because the doctor's certification did not directly conflict with the deposition testimony. The court responded that plaintiff's failure to identify the conversations in response to defendants' interrogatories, only to contain them in the later certification, was a "conflict on a critical issue." The court then noted if the defendants had told plaintiff he would be paid when the hospital was sold, then the statute of limitations could be equitably tolled until that date, "because there's a date where your guy could have reasonably relied on the promise."

The court found plaintiff was unable to determine whether he was paid in full for any of the four contracts under which he worked, was unable to produce his tax forms to substantiate his claims of nonpayment and was unable to present other evidence besides his alleged conversations with Diana Zheludkova. The court found no evidence in the record that either Dunaev or Lipsky confirmed the $255,000 amount. The court then stated, "if that was the only question that would be enough to defeat the defendant's [sic] motion for summary judgment on the question of the amount of damages because we now have an admissible statement by an . . . unidentified woman of defendant representative saying $255,000."

Noting that the inquiry did not end there, the court then found the record was devoid of any disclosure by a representative of the defendants that plaintiff should wait until the hospital is sold to get paid. Additionally, the court stated, "[t]here is nothing on this motion record from which a rational jury can reach a rational conclusion as to whether all, some or what part of the $255,000 should be apportioned for 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017. That's eight years of annual contract." Without proof of a later promise to pay upon the sale of the hospital, the court held any claim prior to November 2014 was barred by the six-year statute of limitations. The court then dismissed plaintiff's complaint:

> for failure and inability to be able to prove the amount of damages which survive after application of the Statute of Limitation: i.e., the plaintiff cannot prove to a jury based upon the accountant's statement alone . . . what the amount of $255,000 was attributable to the period after . . . November 24, 2014 until the date the complaint was filed November 24, 2020.

For completeness, the court also held that had the statute of limitations not dismissed all claims, allegations of plaintiff's breach, and plaintiff's claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing would have been a jury question. The court also rejected accord and satisfaction as a basis for summary judgment, since the record contained no

9

agreement between the parties that a January 2018 payment of $10,000 settled all plaintiff's claims. The court stated it would dismiss the conversion count to the extent that it represented a claim of fraud against Dunaev. The court then entered summary judgment in defendants' favor, dismissing the complaint with prejudice as against all parties.[4]

Plaintiff moved for reconsideration, arguing the court misapplied the sham affidavit doctrine because the statements in plaintiff's certification did not "clearly and sharply contradict" his previous statements. Plaintiff's counsel identified the specific passages from plaintiff's deposition recounting a December 2017 promise by Dr. Lipsky that plaintiff would be paid once the hospital was sold, which, according to the court's reasoning at the original hearing, could justify an equitable tolling of the statute of limitations. In the alternative, even if equitable tolling were not available, plaintiff argued the last payment doctrine would permit the plaintiff to apply whatever payments he did receive to the oldest debts, preserving the remaining amount owed as within the statute of limitations. Plaintiff also argued defendants' answers to

---

[4] The order granting summary judgment in defendants' favor also reflected plaintiff's voluntary dismissal of all claims against McVey.

interrogatories, together with the contract documents themselves, were a sufficient basis for a jury to calculate damages owed.

The court denied the motion for reconsideration, standing by its earlier ruling that the statements in plaintiff's certification accompanying the motion for summary judgment constituted a sham affidavit. The court reiterated that even if defendants' statements promising to pay plaintiff equitably tolled the statute of limitations, the jury would not be able to determine how to apportion the damages among the years without speculating.

On appeal, plaintiff argues: summary judgment was inappropriate because the complaint was timely and defendants failed to sustain their burden as to a statute of limitations defense; the statute of limitations should be equitably tolled and the court incorrectly applied the sham affidavit doctrine to prevent such equitable tolling; and denial of plaintiff's motion to extend discovery was an abuse of discretion.

II.

We review a grant of summary judgment de novo, using the same standard that governed the trial court's decision. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits,

11

if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (quoting R. 4:46-2(c)); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). However, "[a] trial court should never decide on its merits a dispute on which a rational jury could go either way." Driscoll Const. Co. v. State, Dep't of Transp., 371 N.J. Super. 304, 315 (App. Div. 2004) (citing Gilhooley v. Cnty. of Union, 164 N.J. 533, 545-46 (2000)). "When no issue of fact exists, and only a question of law remains," the reviewing court owes no special deference to the trial court's decision. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins., 224 N.J. 189, 199 (2016).

### III.

Plaintiff posits that summary judgment based on the statute of limitations is inappropriate where, as here, the claims arose from payments owed both within and outside the six-year window. According to plaintiff, because defendants did not differentiate his payments among the different contracts, the payment application rule permits him to apply these partial payments to the oldest claims falling outside of the six-year window, therefore preserving the entirety of the amounts due to him within the six-year window. Plaintiff stresses

defendants bore the burden of proof on its statute of limitations defense, and they failed to show that his contractual claims accrued prior to November 24, 2014.

A party alleging breach of contract must "prove that there was a breach which in fact caused some damage. Once the fact of damage is established, the mere uncertainty as to the amount will not bar recovery." Tannock v. N.J. Bell Tel. Co., 223 N.J. Super. 1, 7 (App. Div. 1988). The "uncertainty" factor applies to "uncertainty as to the fact of damage and not as to its amount, and where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery." V.A.L. Floors, Inc. v. Westminster Cmtys., Inc., 355 N.J. Super. 416, 424 (App. Div. 2002) (quoting Tessmar v. Grosner, 23 N.J. 193, 203 (1957)).

N.J.S.A. 2A:14-1(a) requires a party bringing a breach of contract claim to file suit within six years of the date of the accrual of the cause of action. To determine when the cause of action has accrued, "the relevant question is when did the party seeking to bring the action have an enforceable right." Metromedia Co. v. Hartz Mt. Assocs., 139 N.J. 532, 535 (1995) (quoting Andreaggi v. Relis, 171 N.J. Super. 203, 235-36 (Ch. Div. 1979)). Courts have used the "installment" method of accrual to apply the statute of limitations to claims

involving agreements to make periodic payments, determining that "a new cause of action arises from the date each payment is missed." Id. at 535 (citing 4 Arthur L. Corbin, Corbin on Contracts § 951 (1951 & Supp. 1994)).

Generally speaking, and subject to some exceptions where a third-party's interests are implicated, the payment application rule allows "a creditor who is owed more than one debt by a debtor [to] apply the payments to the debtor's account in any manner it chooses so long as the debtor has not issued specific directions to the contrary." Craft v. Stevenson Lumber Yard, Inc., 179 N.J. 56, 72 (2004).

Here, in the statement of facts accompanying their motion for summary judgment, defendants acknowledge the June 2011 Sleep Center contract for $19,500 annually, the December 2012 Medical Staff President and ICU Co-Director contracts for $25,000 annually and $33,600 annually, respectively, and the September 2014 Chief Medical Officer contract for $75,000 annually. All these contracts specified bi-weekly payments. Where such express and unambiguous contract terms exist, indefiniteness as to plaintiff's damages cannot serve as a valid basis for summary judgment in defendants' favor. Dividing the annual amounts into twenty-six equal amounts to reflect bi-weekly pay periods would not be an exercise in speculation, as the trial court feared.

Plaintiff testified defendants' payments began to dwindle beginning in December 2013. If so, December 2013 would be when his cause of action first accrued, and new causes would have accrued each time defendants failed to issue a biweekly paycheck. From December 2013 through August 2014, plaintiff held three roles—Director of the Sleep Center, President of Medical Staff, and Co-Director of the ICU—for a combined annual salary of $78,100, or $3,003.85 each biweekly pay period. In September 2014, he took on the additional role of Chief Medical Officer for an annual salary of $75,000, or $2,884.62 each biweekly pay period, for a total expected biweekly pay for all four roles of $5,888.46.

To preserve the oldest of his claims, plaintiff needed to file suit within six years of the first claim accrued, or by December 2019. Instead, he filed suit in November 2020, barring any claim accrued prior to November 2014. Therefore, the statute of limitations prevents him from asserting claims for paychecks missed between December 2013 and November 2014. N.J.S.A. 2A:14-1 serves as a basis for partial summary judgment in defendants' favor for any cause of action accruing prior to November 2014. However, each pay period missed from November 2014 until the sale of the hospital in December 2017 represents a

cause of action accruing within the six-year timeframe, and the statute of limitations does not serve as a basis to dismiss these portions of plaintiff's claim.

Plaintiff's invocation of the payment allocation rule does not render his alleged damages so speculative as to warrant summary judgment in defendants' favor. Neither party has produced evidence of any payments made except for the eleven checks dated between April 2016 to September 2017 and totaling $85,189.68. Viewing this record in the light most favorable to plaintiff as the non-moving party means giving him the favorable inference that these were the only checks he received from December 2013 until the sale of the hospital. Since the lump sum checks did not specifically denote the pay period to which they applied or the contracted roles for which plaintiff was being paid, plaintiff would be permitted to apply those amounts to older debts, even if the statute of limitations would prevent him from recovering those amounts in suit.[5]

Whether plaintiff materially breached the terms of his contract such that defendants were justified in withholding payment is a genuine question of material fact precluding summary judgment. Similarly, whether plaintiff

---

[5] Even if the payment application rule did not apply to preserve the entirety of plaintiff's causes of action accruing within six years of his complaint, the record provides sufficient basis for a reasonable factfinder to award him the amounts owed under the contract less the amounts received in the eleven checks.

received an additional $10,000 after the hospital was sold and whether that represented accord and satisfaction of any outstanding debt is also a genuine question of material fact precluding summary judgment. The order granting summary judgment in defendants' favor for claims accruing on and after November 2014 is reversed, and the matter is remanded for a jury to determine if plaintiff has proven that he is owed salary.

## IV.

Plaintiff next argues the court abused its discretion when denying his motion to extend discovery and granting defendants' motion to quash the subpoena on Zheludkova. A trial court's discovery rulings are reviewed under the abuse of discretion standard. Brugaletta v. Garcia, 234 N.J. 225, 240 (2018). See also Leitner v. Toms River Reg'l Sch., 392 N.J. Super. 80, 88-89 (App. Div. 2007) (reviewing for abuse of discretion the denial of a motion to reopen discovery for good cause shown under Rule 4:24-1(c)).

Here the court, denied the motion to reopen discovery on procedural grounds. On appeal plaintiff argues good cause existed to extend discovery. Had plaintiff cured his procedural errors, he would have had to prove "exceptional circumstances" existed to extend discovery because the motion came after the conclusion of the applicable discovery period, and after the trial

date has been fixed.  R. 4:24-1(c); <u>Huszar v. Greate Bay Hotel & Casino, Inc.</u> 375 N.J. Super. 463, 472-73 (App. Div. 2005).  However, plaintiff never attempted to cure his procedural errors.  As such, the court did not abuse its discretion in failing to reopen discovery.

To the extent we have not specifically addressed any remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(e).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2670-22